Chief Justice Marshall
delivered the opinion of the Court.
It is manifest from the statements of the petition that the primary object of the entire transaction to which it refers, was, so far as Page and the Watsons were concerned, to benefit Mrs. Watson by securing for her use the net profits, or a certain portion of the profits, of a confectionery store, which was expected, under proper management, to yield a large profit. It was for the promotion of this object that Page incurred the responsibility of purchasing the store, and it was for the purpose of securing at once an indemnity against that responsibility, and the intended benefit to Mrs. Watson, that the services of Foster for conducting and managing the business were engaged, by the promise of a joint and equal interest with Mrs. Watson in the entire establishment, so soon as it should be paid for, or when Page should be otherwise released from responsibility. To earn this extraordinary compensation was of course the motive of Foster for undertaking the service required, and was with him the primary object of his engagement. But with the other parties the object was to secure an indemnity to Page, and the intended benefit to Mrs. Watson, by the proper management of the business in which she was to be interested. It was to effect this object that the services of Foster were sought for and engaged; and that as a means of securing the requisite attention, skill and fidelity on his part, this prospect of extraordinary compensation, which according to the statements of the petition might be easily and speedily realized, was held out to him by the covenant of Page, that when the es *384 tablishment should be paid for, (as it was expected to be out of its own profits.) or when Page should be otherwise released from responsibility for it, he would convey it to Mrs. Watson and Foster, or as they should direct. It was in that event only' that the establishment was to become the property of Foster and Mrs. Watson; until then it was to remain the property of Page, who expressly reserved the right of employing another agent for its management.
1, Where one undertakes to perform a contract of a specific character in services upon which he is to receive a fixed com ponsution, he cannot claim Biu-h fixed compensation under the contract until performance, unless prevented by the other party to the contract without cause; in which event the party is entitled to a rateable com pensation, ac cording to the •terms of the contract. But if the other party have just cause for obstructing performance of the condition precedent, nothing cm be claimed for the part performance, hut a reasonable compensation commensurate with the service rendered.
It is evident that the expected services of Foster constituted the sole consideration of any benefit intended to be secured to him by the covenant, and if its language imports anything more, it is to that extent wholly gratuitous and unenforceable. If this be not the case, then although Page might have to pay for the store himself, without any aid from its profits, or although Foster should withhold his services entirely, or should render such slight service, and in such a negligent manner as was manifestly inconsistent with his duty and inadequate to the attainment of the object of the contract; and if in consequence of this, another agent should be necessarily employed, and by his services the store should be made to pay for itself, Foster might still claim the promised compensation, however little he might have contributed by his services to the end and objects of the arrangement.— And as this would most obviously violate the intention of the parties, the covenant must be understood as being based upon the consideration and condition of a faithful and continued discharge on the part of Foster of the duties implied, not only in his undertaking to manage this concern for the purposes which his employers had in view, but also in the extraordinary compensation promised, and which evinces the importance of the object in view, and also and especially the importance attached to his services as the chosen means of its accomplishment.
It was evidently the expectation of the parties that the store should pay for itself, and that in this way the price for which Page had become responsible *385 should either be paid to, him, or paid to his vendors in discharge of his responsibility. To effect this object the services of Foster were engaged, and upon its being effected they were to be compensated by the promised transfer to himself and Mrs. Watson. If a payment by or for the benefit of these parties, which should release or remunerate Page, might entitle them to the transfer, though the means of payment were not derived from the store, such an event does not appear to have been contemplated, and as it has not happened, it may be regarded as wholly out of the case.
Then the essence and substance of the transaction was, a contract on the one side to employ and permit, and on the other to render service as the manager and conductor of the store for the purpose of paying for it out of the profits or proceeds of the business, and of thus entitling Mrs. Watson and the agent by whose services this object was to be effected, to the joint proprietorship of the store. And as the services of Foster were the only consideration for the interest which he was to have, so the continuation of those services until the object should be accomplished, was the sole condition on which he was to become entitled to the promised compensation, or any part of it. The contract on his part was a continuing contract, to terminate only with the accomplishment of its object, and as its performance was the consideration and condition of the stipulated reward, and could not be complete until the object of his undertaking was accomplished, he could not until that event be entitled to anything under the contract, because he could not until then have performed the condition precedent on which his entire right would depend. The prevention of his performance by the act of the other party, without his default, would take the case out of this rule, so far only as to entitle him to a rateable compensation according to the terms of the contract. But without such excuse for nonperformance, he would be entitled to nothing under the *386 express contract, and could at most claim compensation only for the value of his services actually rendered.
2. Though a party may have failed to fulfill a contract by the performance of service which ■would entitle .him to a fixed c ojmp ensation, if he has performed service for the benefit of the other party, he may bo entitled to compensation ior the valueof such services.
The petition discloses the fact, that in about five months after the making of this contract, and at a time when its object had not been either literally or substantially accomplished, he was by his own voluntary act, viz., by becoming and remaining intoxicated, rendered unfit, and in fact unable to attend to the business of the store, and that his services therein were in fact discontinued or suspended for some days. This was not only inconsistent with the duties implied in his undertaking to manage the store, and a violation of that engagement, but it was a breach of the express promise made by him on the requisition of Page when the covenant was delivered to him. But it was not merely a violation of duty and of contract, by failing to perform the proper services in the store, and by the breach of his verbal promise to abstain from intoxication; it was in itself gross misconduct, which proved, or tended to prove, that he was not to be confided in for the proper management of the business which had been entrusted to him, and which, although it might have been overlooked if the other parties had chosen, justified them in excluding him from future service and from all interest under the contract, unless under new stipulations which they might deem sufficient to secure that faithful attention and prudent management which the original contract certainly, though not expressly, required. And as he did actually enter into new stipulations, by which he agreed that if he should afterwards get to drinking, or otherwise become inattentive to his duties as agent, &c., he would at once surrender his connection with the establishment and forfeit all interest in it, and all claim to wages, we are of opinion that by his subsequently becoming and remaining intoxicated, and unfit for some days to attend to the business, he again put it in the power of the other parties to displace him from his *387 employment, and to divest him of any interest under the contract, and that he has no right to complain on account of their having done so. He has by his own conduct violated his original as well as his subsequent engagement and duty, and having by his own fault failed in his part of the contract, and given to the other party the right to prevent his future action under it, he has lost the right to claim anything by virtue of its provisions in his favor. So far, therefore, his claim, as presented in the petition, is without foundation in equity, and the demurrer was properly sustained to that extent.
3. If a party in his bill in chancery fail to show that he ig entitled to the specific relief which he asks, yet if he shows a right to any relief, even in a court of law, a demurrer to the bill should not be sustained as to the whole claim, but the case transí erred to the common law docket.
But we are of opinion that he still has a right to a just compensation for his services actually rendered, and that the court, instead of dismissing the petition, should have directed or allowed such amendment as would have presented the plaintiff’s claim for his services independently of the contract, and on the principles of a quantum meruit, and should have transferred the case to the common law side of the court. The agreement to surrender the claim to compensation, was in effect a forfeiture, or penalty, from which the petition shows a right to be relieved, on account of the pressure of circumstances under which it was made, and to this extent the plaintiff showed himself entitled to such relief as would prevent the agreed forfeiture from operating against his claim to a reasonable compensation.
Wherefore the judgment is reversed, and the cause remanded with directions to overrule the demurrer, except to the extent above indicated, and for further proceedings.