Motion to strike bill of exceptions denied July 17, 1923, argued on the merits March 25, affirmed May 11, 1926.

## JOHN DEERE PLOW CO. *v.* SILVER MANUFAC- TURING CO.

(216 Pac. 743; 245 Pac. 1083.)

**Exceptions, Bill of—Trial Court has Discretion to Settle Bill After Time Limited by Its Rules.**

1. The trial court may in its discretion settle and allow a bill of exceptions after the expiration of the time therefor limited by the rules adopted by the trial court.

## ON THE MERITS.

**Sales—On Termination of Contract Giving Exclusive Sales Right of Machines, Held, in View of Term "Consignment," Manufacturer was Bound to Take Back Repair Parts.**

2. Considering in its entirety the manner in which the parties dealt in reference to contract, whereby plaintiff was given exclusive sales rights of machines made by defendant, *held,* on its termination defendant was required to take back repair parts, in view of use of term "consignment."

**Trial—Direction of Verdict, Though There be Evidence for Jury, is not Error Where Both Parties Move Therefor.**

3. It is not error to direct verdict, though there be sufficient evidence for jury, where both parties move for directed verdict, thus virtually stipulating absence of issue of fact.

**Evidence.**

4. Verbal negotiations, preceding execution of written contract, are deemed merged in the writing, so testimony relative thereto is not admissible.

**Appeal and Error—Admission of Evidence of Oral Negotiations Preceding Written Contract Held Harmless, Where Both Parties Moved for Directed Verdict.**

5. The parties by both moving for directed verdict having in effect said there was no fact to be tried, so that it only remained for court to construe written contract, admission of oral testimony of preceding negotiations was harmless.

---

Appeal and Error, 4 **C. J.**, p. 972, n. 65, p. 999, n. 22.
Consignment, 12 **C. J.**, p. 528, n. 36, 37.
Contracts, 13 **C. J.**, p. 597, n. 79, 80.
Sales, 35 **Cyc.**, p. 290, n. 24, p. 291, n. 25, p. 661, n. 78.
Trial, 38 **Cyc.**, p. 1583, n. 73.

From Multnomah: Walter H. Evans, Judge.

In Banc.

On the ninth day of February, 1923, final judgment was entered in the above-entitled court and cause against the defendant, the appellant here. On the eighteenth day of May, 1923, the appellant tendered to the Circuit Court a proposed bill of exceptions. The respondent appeared and objected to the signing

---

3.  See 26 **R. C. L.** 1080.
4.  See 10 **R. C. L.** 1016.
5.  See 2 **R. C. L.** 247.

of any bill of exceptions and the Circuit Court made the following order:

"The court has given consideration to the authorities cited in the argument on objections to the signing of bill of exceptions, and is of the opinion that the same should be signed. Mr. Justice Bean, in *McElvain* v. *Bradshaw,* 30 Or. 569. (48 Pac. 424), laid down the rule as follows: 'But whether the bill shall be settled and allowed after the time limited is a matter within the sound judicial discretion of the trial judge.'

"And in the case of *West* v. *McDonald,* 74 Or., at page 424 (144 Pac. 655), the supreme court states that 'When the trial judge sees fit to settle the bill of exceptions even after the time limited this court will not disregard it. The bill in this case was so settled by the judge, and will be considered for the purpose of this appeal.'

"Counsel for the Silver Manufacturing Company gave his excuse for not having complied with the rule, and the court is of the opinion the excuse is valid and sufficient to authorize the court in exercising its discretion herein.

"The bill will be signed and dated as of May 24th."

The respondent moves to strike the bill of exceptions from the files on the ground that it does not comply with certain rules of the Circuit Court for Multnomah County, which are as follows:

"Bills of Exceptions.

"Rule 49. Any party to a civil or criminal action may within thirty days after the entry of final judgment, tender a bill of exceptions.

"Rule 50. It shall not be necessary to enter an order in the Journal granting time to file a bill of exceptions unless the court, by special order, extends or shortens the time within which to file it.

"Rule 51. A copy of the proposed bill of exceptions shall be served, as copies of all papers filed in the case are required to be served by Rule 27.

"Rule 52. The adverse party must, within ten days after the service of a bill of exceptions, if the same is unsatisfactory, file a statement of objections thereto.

"Rule 53. The court, upon being satisfied that the adverse party or his attorney has had due notice thereof, may, on application of either party, grant an extension of time to file a bill of exceptions, or a statement of objections thereto, or fix a time for the settlement thereof, but written notice shall not be required."

MOTION DENIED.

For the motion, *Messrs. Cake & Cake* and *Mr. L. A. Liljeqvist.*

*Contra, Messrs. Teal, Winfree, Johnson & McCulloch.*

McBRIDE, C. J.—1. It is a rule which has been several times reiterated by this court that, while the right of a court to limit the time for settling a bill of exceptions is indispensable to the orderly administration of justice, the court may, in its discretion, settle and allow the bill after the expiration of such time: *McElvain* v. *Bradshaw,* 30 Or. 569 (48 Pac. 424); *Francis* v. *Mutual Life Ins. Co.,* 61 Or. 141 (114 Pac. 921).

In the case last mentioned there was a rule of the court very similar to the rule above cited. See, also, *West* v. *McDonald,* 74 Or. 421 (144 Pac. 655).

The whole doctrine to be derived from these cases is that, while a court is not bound to settle and approve a bill of exceptions after the time specified in the rule or granted by the court, it may do so if in

118 Or.—5

its judgment the excuse presented for noncompliance with the rule is sufficient.

The motion to strike the bill from the files is denied.                                   MOTION DENIED.

---

(Affirmed May 11, 1926.)

ON THE MERITS.

(245 Pac. 1083.)

For appellant there was a brief over the name of *Messrs. Teal, Winfree, Johnson & McCulloch,* with an oral argument by *Mr. Jno. W. Shuler.*

For respondent there was a brief over the name of *Messrs. Cake & Cake,* with an oral argument by *Mr. L. A. Liljeqvist.*

BELT, J.—Plaintiff, corporation, is engaged in the business of selling farm implements and machinery throughout the Pacific northwest. Defendant, corporation, is a manufacturer of ensilage cutters and shredders for the purpose of resale throughout the United States. On December 21, 1916, the parties hereto entered into a written contract wherein defendant agreed to supply plaintiff, as its sole agent, its products as above mentioned, to be sold in certain designated territory. This contract was renewed for a period of three years from January 1, 1920, to and including December 31, 1922. Among other things it was provided:

"First party (Silver Manufacturing Company) agrees to carry in stock with the second party (John Deer Plow Company) a complete assortment of repairs with which to supply the trade, such stock to consist of extra parts as may be required, but not to

include knives or shredder blades; such Consigned Repairs to be carried are not to exceed in net value an amount equal to 10% of the net purchases of the second party during the current year. The minimum amount of repairs to be carried in stock by the first party are in no event to be less than Five Hundred Dollars ($500.00) in net value.

"The second party is to render to the first party an inventory of repairs on hand December 1st of each year, and to make payment for all repairs sold up to that time in accordance with the list prices of the first party's repair list, less such discounts as are provided in the price schedule hereto attached and marked Exhibit 'A.'

"In the event of this agreement being terminated, it is mutually agreed that the party of the second part will deliver at its warehouses, free of freight charges, consigned repairs and extra parts on hand, on the order of the first party."

On August 7, 1920, plaintiff gave due notice to defendant that it would discontinue the sale of its ensilage cutters and shredders on December 31, 1920, and that it desired to terminate the contract as of such date.

It is alleged that at the time of the termination of the contract, plaintiff had on hand repair parts consigned to it upon which was due from defendant the sum of $3,569.57, after having credited defendant for the amount which plaintiff owed for goods purchased under the terms of the contract. Plaintiff claims it was the duty of defendant, upon the termination of the contract, to credit it for the net price of all repair parts consigned and which it had on hand at that time. Defendant asserts that plaintiff is obliged to pay for all repair parts, excepting an amount equal in value to 10 per cent of the net purchases during the current year. Plaintiff says the repair parts in question were consigned to it on account and that,

upon termination of the contract, it was only obliged to pay for such repair parts as it had sold to the trade. Defendant, however, says that the repair parts supplied by it to plaintiff should be considered as a sale, with the exception of the amount which it agreed to keep in stock under the 10 per cent clause. There is no material dispute in the facts. The decision of the controversy hinges upon the construction to be given to the written contract of the parties. If plaintiff's theory is correct, the trial court was right in directing the jury to return a verdict in its favor for $3,569.57; if defendant has placed the proper construction upon the agreement, then the court erred in refusing to allow its motion for a directed verdict for the amount alleged to be due it.

2. Considering the contract in its entirety and the manner in which the parties dealt in reference thereto, we are convinced that it was incumbent upon defendant, at the termination of the agreement, to take back repair parts, and, upon failure so to do, defendant would be liable for the stipulated price thereof. It is significant, under the contract, that plaintiff, on December 1st of each year, was required to make an inventory of repairs on hand and to make payment for all repairs sold. If a sale was contemplated, the contract would undoubtedly be so worded as to require plaintiff to pay for all repair parts whether they were sold to the trade or not. When inventories were made in December of each year, the invoices were marked "consignment" and there was no segregation of repairs. The inventory contained everything on hand that had been shipped on consignment. A letter from defendant was introduced in evidence which requested an inventory of

repairs "on consignment." It is to be borne in mind that plaintiff had an exclusive sales agency to handle the goods manufactured by defendant, and, after the contract was terminated and plaintiff had ceased to sell whole machines, it would scarcely be contemplated by the parties that plaintiff should not be relieved of extra parts. We think the parties fully understood and appreciated the significance of the use of the term "consignment."

3. Counsel for appellant urges "if there is any evidence sufficient to be submitted to the jury, it is error to direct a verdict." This rule has no application in the instant case, where both parties moved for a directed verdict. They virtually stipulated that there was no issue of fact involved. Under such circumstances it was the duty of the court to direct a verdict: *Hudelson* v. *Sanders-Swafford Co.,* 111 Or. 600 (227 Pac. 310).

4, 5. It was error to admit the testimony of witness Shaver on behalf of plaintiff whereby he undertook to relate a conversation had with the defendant concerning the disposition of repair parts upon termination of the contract. All verbal negotiations preceding the execution of the contract are deemed to have been merged in the writing. However, since the parties, by their motions for directed verdicts, have, in effect, said there was no fact to be tried, we fail to see wherein the defendant could have been injured. It remained only for the court to construe the written contract. It is well established in this jurisdiction where incompetent evidence is received in actions tried without a jury that the same does not constitute reversible error unless injury has necessarily resulted: *Puffer* v. *Badley,* 92 Or. 360 (181 Pac. 1, 4 A. L. R. 1561); *Williams* v. *Burdick,* 63 Or. 41 (125 Pac. 844,

126 Pac. 603); *Taffe* v. *Smyth,* 62 Or. 227 (125 Pac. 308).

Respondent asserts with much reason that we should not take cognizance of the ruling of the court in directing a verdict, since no exception was taken thereto (*Bailey* v. *Security Ins. Co.,* 100 Or. 163 (196 Pac. 252), but we have preferred to consider the case on its merits.

The judgment of the lower court is affirmed.

                                          AFFIRMED.

RAND, BEAN and BROWN, JJ., concur.