## Talamini v. Rosa.

(Decided Nov. 23, 1934.)

BEN S. WASHER, L. H. HILTON, JOHN MARSHALL, Jr., and BALDWIN C. BURNAM for appellant.

CRAWFORD, MIDDLETON, MILNER & SEELBACH and BENEDICT ELDER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a decree of the Jefferson

chancery court, sustaining appellee's general demurrer to appellant's petition, seeking the specific performance of a contract for the sale and transfer to appellant of certain shares of stock in the American Mosaic & Tile Company, and dismissing the petition upon his election to stand thereon.

The facts forming the basis of the controversy between the parties, out of which the contract for the sale of this stock here involved arose, are briefly as follows: For some years the parties hereto, Talamini and Rosa (the plaintiff and defendant below, respectively) were associated in the ownership of the capital stock and operation of the business of this mosaic company, a Kentucky corporation having 200 shares of closely held capital stock.

In November, 1925, a contract was entered into between Talamini and Rosa, whereby Rosa, the original and then owner of all the 200 shares of stock, sold and transferred the same to Talamini upon terms of a cash payment of $50,000 and his deferred purchase-money notes secured by the stock for the remainder of the purchase price. In the December following—matters of the company's control and management remaining in controversy—Rosa and Talamini entered into a second contract, whereby Rosa repurchased a controlling interest in the stock at an agreed price paid and to be paid therefor and upon further terms as to the qualified management and operation of the business by Talamini, with certain checks imposed thereon by way of periodical reports to be made to Rosa as to the status of the business and requiring the countersigning by Rosa of company checks issued by Talamini against the company's funds. These negotiations had between them, though never carried to completion, resulted in the acquisition by Talamini of certificates of the entire capital stock of the company, with the exception of certain outstanding qualifying shares which did not stand in Rosa's name. Under and by reason of these certain negotiations had between them, Talamini claims to be the beneficial owner of all the stock and Rosa claims to be the beneficial owner of at least one-half of it.

For the purpose of settling this controversy between them, Rosa and Talamini entered into an agreement on November 8, 1933, providing as follows:

"Memorandum of Settlement Between Mr. Rosa and Mr. Talamini

"Agreed on November 8, 1933.

"1. *Talamini is to pay, or properly secure the payment, to Rosa of $18,000.* (Italics ours.)

"2. Talamini releases Rosa from all claims of whatsoever kind or nature.

"3. Rosa releases Talamini from all claims of whatsoever kind or nature he may have against him; and each will surrender to the other any and all evidences which either has against the other of any claim against such other.

"4. This settlement does not affect any joint ownership which they may have in any real estate, each retaining whatever interest he now has in such jointly owned real estate.

"5. *Rosa will sign and transfer to Talamini all interest which Rosa has in the capital stock of the American Mosaic & Tile Company, and also surrenders any and all claim which Rosa has against that corporation, or against Talamini individually.* (Italics ours.)

"6. Talamini assumes, and will carry out and pay, any and all liabilities of whatsoever kind or nature, which otherwise might exist against Rosa, on account of, or arising under, or by reason of the business of said corporation; and Talamini will become the owner of the entire 100% of the capital stock of that corporation, and will do as he pleases with it.

"This memorandum has been dictated jointly by Mr. Bullitt and Mr. Washer, as evidencing their understanding of the agreement, and the conference is adjourned for a week in order for Mr. Talamini to make his arrangements to raise the $18,000 to pay Mr. Rosa.

"7. The above has been dictated by Mr. Bullitt and Mr. Washer, as representing what they understand is the final settlement between the two parties, of every kind. We recognize that there may be some factor that we have overlooked in the final settlement, but to carry out the intent of this agreement, if such unknown or unthought of factor should turn up. Mr. Bullitt and Mr. Washer are to mutually settle it between the parties, in the spirit

of this agreement; and the parties hereto agree that it may be so settled.''

It is to be noted that at this conference this agreement was prepared for the contracting parties by their attorneys and that the same was, after having been read and approved by them as evidencing their agreement, signed both by them and by their attorneys. It is to be noted that by the provisions of this agreement, termed a "memorandum of settlement" between them, Talamini agrees to "pay, or properly secure the payment, to Rosa of $18,000'' and to release Rosa from all claims and that Rosa, in consideration thereof, agrees to "sign and transfer to Talamini all interest which Rosa has in the capital stock of the American Mosaic & Tile Company,'' with the further recital that the contract represents "the final settlement between the two parties, of every kind.'' In harmony with such declared purpose, by clause 6 it is further set out that Talamini "assumes, and will carry out and pay, any and all liabilities of whatsoever kind or nature, which might otherwise exist against Rosa, on account of, or arising under, or by reason of the business of said corporation'' and that Talamini is, in consideration of these things, under the agreement, to become the owner of the entire 100 per cent. of the capital stock, to do with it as he pleases. Further, it is provided that Rosa is to release Talamini, as provided by clause 3, from all claims and, as provided by clause 5, is to surrender any and all claims which he has against the corporation, or against Talamini individually.

It further recites that "the conference is adjourned for a week in order for Mr. Talamini to make his arrangements to raise the $18,000 to pay Mr. Rosa.''

These provisions of the contract, it appears, clearly show (as argued by appellant) that the paramount object of this contract was to create a binding obligation for the purchase and sale of Rosa's interest in the capital stock of this trading corporation, which if consummated would give Talamini, as the purchaser thereof, the unquestioned control of that company and terminate various other controversies between the purchaser and the seller, long interfering with its profitable operation. Appellant contends that such being the nature and object of the contract, "it is manifest that the legal remedy for its breach, damages, would be highly inadequate.''

After entering into this contract on November 8, Mr. Talamini, through his attorney, on the following day wrote Mr. Rosa, or rather his attorney, proposing a plan of settlement, as contemplated under the indefinite or second of the alternate provisions of clause 1 of the agreement, by offering in somewhat ambiguous and uncertain terms to secure the payment of this $18,-000 to Rosa by his note, secured by mortgage of his one-half interest in certain real estate jointly owned by them, payable at such time as might be agreed upon. Upon receiving no response to this proposition, Talamini by his attorney on November 15, or within a week after the adjournment of their conference had for the purpose of enabling Talamini to raise this $18,000 with which to pay for the stock (Talamini having arranged a bank loan therefor), called at the law office of Rosa's attorney and tendered him his check for said amount, payable to Rosa's order and drawn upon the First National Bank of Louisville. This check, so presented as payment for the stock at the law office of Rosa's attorney, was—due to the then absence of his attorney, Mr. Bullitt—accepted and receipted for by his law partner, Mr. Wolford. This payment of the stock debt by a good check, to which no objection was made that it was not lawful money, was, when thus tendered and accepted by Rosa or his attorney as such, clearly sufficient as a performance to constitute a waiver by Talamini of his option, given by clause 1, to indefinitely perform his obligation to pay by ''securing payment of the $18,000 to Rosa,'' and was an election by him to perform his obligation to Rosa in the manner provided for by the other or definite one of its alternate provisions for payment, to wit, by making a cash payment of the promised $18,000, which being performed thus removed and cured appellee's criticism of clause 1 as being so indefinite and impotent to bind Talamini as to render the contract void for lack of mutuality.

The defendant Rosa having then failed and refused to carry out the terms of this contract by transfer of his interest in the capital stock of the company and to release such claims as he might have against the plaintiff or the corporation, as called for by the agreement, Talamini filed his suit in equity to obtain specific performance of the contract. His petition alleged the execution of the contract on November 8, 1933, and the facts in substance as hereinabove stated and his then and con-

tinued ability and willingness to perform it and Rosa's failure and refusal to fulfill his obligation assumed under the contract. Answer and cross-petition, with amendment thereto, were filed, to which plaintiff demurred. Upon a hearing on defendant's motion to set aside the court's order sustaining the plaintiff's demurrer to certain paragraphs of the answer and cross-petition, the court set aside the order sustaining it and carried the demurrer to the answer back to the petition and sustained it. The plaintiff thereupon declining to plead further, the chancellor dismissed the petition.

Complaining of this judgment and challenging the propriety of this ruling, the appellant prosecutes this appeal.

Appellant argues that the court erred in dismissing the petition, after sustaining the demurrer, on plaintiff's declining to plead further.

It is unnecessary to here decide whether or not the petition sets out facts sufficient to warrant a decree for the specific equitable relief prayed, as appellant is, even if he should be held not so entitled, yet to be sustained in his contention that if the petition set out any cause of action or if any contract was shown to have been made between them and breached by Rosa, the court erred in sustaining a general demurrer thereto. It has frequently to such effect by this court been held that even should a petition fail to show plaintiff entitled to the specific relief prayed for, but does show a right to other relief, a general demurrer should not be sustained and the cause should be transferred to the proper docket, under section 8 of the 'Civil Code of Practice, which provides that:

"An error of the plaintiff as to the form of action shall be cause, not for the abatement or dismissal of it, but merely for a change into the proper proceedings by an amendment of the pleadings and a transfer of the action to the proper docket."

McCord v. Ball, 220 Ky. 610, 295 S. W. 903; Newman's Pleadings & Practice, sec 550B; 21 R. C. L. 515; Foster v. Watson, 16 B. Mon. 377.

We will therefore first address ourselves to the consideration of the questions: Did plaintiff's petition set out any cause of action in declaring upon the parties' contract of November 8, by clause 1 of which the plaintiff undertook to (1) pay or (2) secure the

$18,000 to the defendant? Did the parties, by reason of making their contract with such alternate provisions to pay or to only "properly secure the payment" of the amount, render it an unenforceable one? Conceding the rule in such case to be, as stated, that the mutuality of a contract in the alternative is to be tested by the weaker alternative, or—that is to say—conceding that such alternate provision of the contract only to "properly secure payment" of the promised $18,000 constituted the true test of its mutuality and further conceding only arguendo, that such weaker alternative was so uncertain or indefinite as to render the contract, when measured by it, one lacking in mutuality, the question next presented is: Could such uncertainty in its terms of payment be thereafter remedied by the promisor, in whose favor and for whose benefit these alternate provisions were made, so as to cure this alleged defect by his waiver of the right to perform his payment obligation as allowed by its second, indefinite, and weaker alternate provision for payment and his election to perform it as prescribed in the first or definite one of these alternate provisions, by making cash payment of the promised amount within the week's time allowed therefor? That such correction or cure of the complained of defect of ambiguity and uncertainty existing in the weaker or alternate term, providing only to properly secure payment, may be so effected by its waiver and performance made under the definite alternate provision, is thus stated in Williston on Contracts, sec. 49:

"The indefiniteness of promises is important not simply because of the inherent difficulty of enforcing a promise to which no exact meaning can be attached, but also because such a promise is insufficient consideration for another promise. * * * It is important at this point to observe only that a promise too indefinite for enforcement will, for that very reason, be insufficient consideration for a counter-promise. If one promise of a bilateral agreement is too indefinite, neither promise will be enforceable. The indefinite promise cannot be enforced because of its indefiniteness, and the counter-promise even though in itself definite, cannot be enforced because of lack of consideration. It may be supposed, however, that such an agreement is performed either wholly or partly by one party or the

other. Let it be supposed first that the promise which originally was definite is performed, this cannot make the indefinite promise enforceable but may give rise to a quasi-contractual obligation to pay fair value of what has been given. If, however, the side of the agreement which was originally too vague for enforcement becomes definite by entire or partial performance, the other side of the agreement [or a divisible part thereof, corresponding to the performance received], though originally unenforceable, becomes binding. And even without performance on either side the original indefiniteness may sometimes be cured by a subsequent definition of the intended performance. But if, in spite of part performance by one party to an indivisible agreement his promises still remain indefinite, he cannot enforce the promises of the other party, unless what has been done amount to substantial performance.''

For a further very apt statement and application of this doctrine, that a side of the agreement, originally too vague and indefinite for enforcement, may be cured of such defect or become definite by performance, so as to make binding the other side of the contract or as thus furnishing a consideration supporting the counter-promise to perform or, again, as thus supplying the element of mutuality first lacking, see the case of Skidmore v. Leavitt, 73 Okl. 196, 175 P. 503, 504, wherein it was held in an action for specific performance of a contract, where no time was fixed by the contract for performance, that action none the less accrued against the vendor, where the vendee within a reasonable time tenders performance of the conditions encumbent upon him. There the contention was made by the defendant that the contract was so uncertain and ambiguous as not to permit specific performance to be decreed by the court. The agreement provided that the second party might pay the sum of $1,500 or give a note and mortgage therefor. The court, in adversely disposing of the contention that the contract was too indefinite for decreeing this performance, said:

''The agreement to give the note is an alternative agreement. The agreement provides that the second party may pay the sum of $1,500 or give a note and mortgage therefor. Where two alternatives exist in a contract, the promisor has a right to

elect which one he will perform, and especially is this true when one of the alternatives is so uncertain as to fail. Foster v. Goldschmidt [C. C.] 21 F. 70; Galloway v. Legan, 4 Mart. [N. S. La.] 167; Barker v. Jones, 8 N. H. 413; Smith v. Sanborn, 11 Johns. [N. Y.] 59; Mayer v. Dwinell, 29 Vt. [3 Wms.] 298.''

See further the case of Bracy v. Miller, 169 Ark. 1115, 278 S. W. 41, reported in 43 A. L. R. 114, with the annotation thereto giving an extended discussion of this subject.

To like effect has this court spoken in the case of Pennagrade Oil & Gas Co. v. Martin, 211 Ky. 137, 277 S. W. 302, 303, it therein saying:

''The rule is that a contract is not void for lack of mutuality where the party who is not bound has performed the conditions of the contract. Allen v. New Domain Oil & Gas Co., 73 S. W. 747, 24 Ky. Law Rep. 2169; Vanover v. Justice, 174 Ky. 577, 192 S. W. 653.''

Also see Kelley et al. v. Ivyton Oil & Gas Co., 204 Ky. 804, 265 S. W. 309, 311.

We thus conclude, in view of such repeated announcement of this rule, that here, as was said by us in the Kelley Case supra, in answer to the defense pleaded of want of mutuality:

''There is no occasion for the objection that the contract is unilateral, for the one who was not obligated to perform has already done so and thereby cured the defect. * * * Such a rule would offend the fundamental principles of equity, and it therefore has no place in the law.''

We are, therefore, for such reason of the opinion that the contrary statement made in the chancellor's written opinion (upon which it appears his complained of judgment was based), to the effect that ''if the contract was *unenforceable when made,* Talamini could not by his own acts standing alone do anything thereafter to make it enforceable,'' does not represent the law of this jurisdiction. We are of the opinion, therefore, that the learned chancellor erred in sustaining the demurrer to the petition upon the authority of such an erroneous statement of the applicable rule. We are not to be

understood, by this, as deciding that the contract as originally made was so indefinite or insufficient in its terms as to constitute an unenforceable contract for want of mutuality, but rather that, conceding only by way of argument that it was so defective as originally made, such defect was cured by the appellant's converting the indefinite obligation into a definite one through the tender and acceptance of a good check in payment thereof. Upon such tendered performance by appellant, taken in connection with the acceptance and retention of the check by appellee, the contract to such extent became no longer executory but executed as to its payment.

Appellant further contends that the petition alleged facts sufficient to entitle plaintiff to specific performance upon the grounds that although the contract called for the transfer of shares of corporate stock, among its other engagements, the defendant had here (both as alleged in the petition and as shown in the evidence) committed a breach of his contract under such circumstances and conditions that recovery of damages therefor would have been inadequate. He argues that the impossibility of valuing in money the subject-matter of the contract and securing the performance promised him by an award of damages is manifest from the very nature of the contract; also, that Rosa's stock in the mosaic corporation being not obtainable elsewhere, it being an unlisted stock and held practically entirely by Rosa, its particular transfer was required in order for appellant to secure the promised control of the mosaic company. The general rule as to the right to a specific performance of a contract for personal property or, as here, for the transfer of shares of corporate stock, is thus stated in 58 C. J. 1034, sec. 247:

"Specific performance of a contract for the sale of personal property will not ordinarily be granted, because there is an adequate remedy at law, as in an action for damages for breach of contract. So a contract to convey chattels having a market value cannot be specifically enforced, unless damages in lieu thereof would be inadequate; and a court of equity therefore will not, unless there is some special reason, specifically enforce a contract for the sale of ordinary articles of commerce, which can at all times be bought in the market, * * * since the remedy at law for damages for a breach of such contract is regarded as complete and adequate."

In section 259, page 1039, of this same volume the following exception is made to this general rule:

"A contract for the sale and delivery of articles indispensable in specie to the party asking relief, unobtainable elsewhere except at considerable expense, trouble, or loss which cannot be estimated in advance, will be specifically enforced."

Also it is said in section 268, page 1043, following: "Where the contract calls for the transfer of stock, so that its chief value is the control and influence given in the management of the corporation, this, in connection with the uncertain value of the stock, is a sufficient ground for specific performance. However, in some jurisdictions the relief has been denied on grounds of public policy."

Compare also the case of Rimes v. Rimes, 22 A. L. R. 1030 (152 Ga. 721, 111 S. E. 34), and lengthy annotation thereto exhaustively discussing this subject and collating many of the cases of our several jurisdictions, including some of our own, establishing the following general rule:

"A contract for the purchase or sale of corporate stock will be specifically enforced where there is some special reason for the purchaser obtaining the same, or where the shares are limited or not easily ascertainable, or where the value cannot be readily ascertained, or where, because of other special or peculiar cricumstances, a remedy at law would not be adequate."

To like effect, see Burton v. Shotwell, 13 Bush, 271; also sections 110 and 111 (pages 298 and 299, respectively) of 25 R. C. L.; Southern Iron & Equipment Co. v. W. H. Vaughan, 201 Ala. 356, 78 So. 212, L. R. A. 1918E, 594 with annotation thereto.

However, it is unnecessary to here further discuss and dispose of the question of appellant's right to have specific performance of his contract of sale and purchase of personal property, which remains a matter to be determined by the learned chancellor upon his rehearing of the case, nor is it now necessary to consider and dispose of appellant's second contention that the court erred in its refusal to allow him to file an amended petition, in view of the conclusion we have reached, as hereinabove indicated, that the court erred in sustaining

the demurrer to appellant's petition and dismissing it, and for which reason the chancellor's decree so ordering is reversed and the cause remanded, with instructions to overrule the demurrer thereto and for further proceedings consistent with this opinion.

The whole court sat with me in the decision of this case.