Argued March 22, reversed and remanded April 18, 1950

# TAYLOR ET UX. *v.* WELLS ET UX.

217 P. (2d) 236

*Don R. Newbury,* of Medford, argued the cause and filed a brief for appellants.

*Otto J. Frohnmayer* argued the cause for respondent. On the brief were Neff & Frohnmayer, of Medford.

Before Lusk, Chief Justice, Brand, Bailey, Hay and Latourette, Justices.

BAILEY, J.

This suit was brought by plaintiffs, Wendell L. Taylor and Alyce M. Taylor, his wife, against John F. Wells and Katherine Wells, his wife, for the specific performance of an alleged option agreement. The complaint alleges that on and before December 20, 1943, and ever since that date, defendants were and are now the owners in fee simple of a 20-acre tract of land situate in Jackson County, Oregon, described by metes and bounds, and a tractor and corn cultivator. Paragraphs IV and V of the complaint read as follows:

"That on or about December 20, 1943, the defendants as lessors and owners and the plaintiffs as lessees entered into an agreement for lease of said described property for a period of three (3) years until December 20, 1946, and at said time and as a part of said agreement of lease and as a part of the consideration therefor it was orally agreed between plaintiffs and defendants that plaintiffs should have the privilege and option of purchasing said real and personal property at any time before the said expiration of said lease, for the sum of Forty-five hundred ($4500.00) Dollars, lawful money of the United States of America, payable either in one lump sum or with such down payment and subsequent installment payments and terms as the said parties might agree upon at the time plaintiffs might exercise such option.

"That there is hereto attached and made a part hereof, as exhibit 'A' the written part of said lease and option."

Exhibit "A" contains this provision: "an option to buy at $4500.00 Down Payment to be agreed to by both parties."

The complaint further alleges that plaintiffs promptly, upon the execution of said agreement, entered into, and have been at all times since in, the sole and exclusive possession of said real and personal property and have made permanent improvements on the real property; that they have performed all the conditions of said agreement on their part to be performed; that on or about October 30, 1945, they informed the defendants that they desired to exercise their option to purchase said property for $4500.00 and at that time offered to pay them that sum of money; that about November 15, 1945, defendants advised plaintiffs by letter that they had decided not to sell the property; that later, and on or about September 18, 1946, plaintiffs, through their attorney, notified defendants in writing that they elected to exercise their option to buy said property for $4500.00 cash; that upon the failure and refusal of defendants to "comply with the terms and conditions of the said option on their part to be performed" this suit was instituted; and that plaintiffs, at the time of making their offer to purchase the property in October, 1945, and ever since that time, have been and are now ready, able and willing to pay defendants the sum of $4500.00. This sum of money plaintiffs tendered into court at the time of filing their complaint. It is also alleged that there is a mortgage on the real property.

Defendants in their answer admit that they are the owners of the real and personal property described in the complaint; that they and plaintiffs executed the written lease on or about the 20th of December, 1943;

that plaintiffs entered into possession of the real and personal property under the terms of the lease; that defendants, on or about November 15, 1945, wrote to plaintiffs that they did not desire to sell the property; that plaintiffs through their attorneys advised them that plaintiffs elected to exercise ''an alleged option to buy said property for $4500.00 cash''; that the copy of the lease and copy of the letter from plaintiffs' attorney to defendants are attached to, marked Exhibits ''A'' and ''B'' respectively, and made a part of the complaint; and that there is a first mortgage lien upon the real property. They deny all the other allegations of the complaint.

After a trial on the merits the circuit court entered a decree dismissing the suit. From this decree plaintiffs have appealed.

The facts in the case are briefly as follows: Plaintiffs had been in possession of the real and personal property here involved for approximately three years prior to the execution of the alleged option agreement. They were desirous of procuring an extension of the lease for at least three years with an option to purchase the property. They consulted defendants about the matter and were advised to have a new lease prepared. Thereupon they obtained a real estate broker who prepared one on a printed form in typewriting. After the description of the real and personal property he inserted the following: ''Subject to sub-lease with owners consent, an option to buy at $''. In this form the proposed contract was taken by the plaintiffs to the defendants and after some discussion Mrs. Wells wrote in pen the following: ''4500.00 Down Payment to be agreed to by both parties.'' Thereupon and after some discussion the agreement was signed with the

provision as to an option, reading in its entirety as follows: "an option to buy at $4500.00 Down Payment to be agreed to by both parties."

Mr. Taylor testified that during the negotiations for an extension of the lease the defendants raised the sale price of the property from $3500 to $4500; that after the execution of the agreement they made permanent improvements on the property of the reasonable value of $75; that they paid all rentals on time; that they had fully complied with all the terms and conditions of the agreement to be performed on their part; and that in October, 1945, he advised defendants that they desired to exercise the option for the purchase of the property and offered to pay them $4500. He and his wife were told that the Wellses would talk the matter over and let them know about the sale of the property. About two weeks later they received a letter from the Wellses, which is an exhibit in the case and reads as follows: "Due to the fact that we have sold this place and also on account of Ray expecting to be home soon from the Army, we decided not to sell at this time." Mrs. Taylor testified that she and her husband were, at the time they attempted to exercise the option in October, 1945, and ever since that time have been, ready, able and willing to pay the $4500 in cash.

The negotiations leading up to and culminating in the execution of the lease agreement were testified to in detail by plaintiffs and defendants. They were in disagreement concerning the terms of the contract. Plaintiffs' testimony did not vary or contradict the written option. Defendants testified that the agreement was that plaintiffs should have a right to purchase the property only in the event that defendants

desired to sell it. All this evidence was admitted without objection.

We shall now direct our attention to the option agreement. In attempting to ascertain its terms we should not overlook the provisions of § 2-214, O. C. L. A., which read as follows:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:

"(1) Where a mistake or imperfection of the writing is put in issue by the pleadings;

"(2) Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 2-218, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. * * *"

By § 2-218, O. C. L. A., we are reminded that "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

In their complaint plaintiffs have attempted to plead what they considered was an oral agreement between them and the defendants. They also attached as an exhibit to their complaint a copy of the lease which contains what purports to be the terms of a written option to purchase. We do not think that the oral agreement, as pleaded, varies or contradicts the terms

of the written option. Later, we shall discuss this matter in more detail. Defendants have not alleged that there was ''a mistake or imperfection of the'' written option agreement, nor do they plead that there was any agreement between the parties different from the one alleged by plaintiffs. Defendants admit the execution of the written lease and option. The validity of the agreement is not placed in issue by the pleadings.

■ It is a general rule that, if any doubt arises from the language of the contract as to the intention of the parties, extraneous evidence may be admitted to aid the court in comprehending its meaning, but that parol evidence is inadmissible to vary or contradict the terms of the written contract. All prior and contemporaneous negotiations are deemed to have been merged in the written instrument. *Dennehy v. Watt,* 116 Or. 189, 194, 239 P. 814; *John Deere Plow Co. v. Silver Mfg. Co.,* 118 Or. 62, 216 P. 743, 245 P. 1083.

■ The lease does not expressly state to whom the option to purchase is given but it is obvious from the situation of the parties that the lessees, the Taylors, were the ones intended. They, and they alone, were the ones to be benefited by it and it was at their request that the provision concerning the option was written into the lease.

■■ The option granted to the plaintiffs to purchase the demised premises was incorporated in the lease agreement. It was supported by the underlying consideration of the lease. 51 C. J. S., Landlord and Tenant, § 81c, p. 636; 32 Am. Jur., Landlord and Tenant, § 299, p. 278. As the contract fixed no time for the exercise of the option, the law implies that the election must be made in a reasonable time. *Mossie v. Cyrus,* 61 Or. 17, 20, 119 P. 485, 624; *Leadbetter v. Price,* 103 Or. 222, 236, 202 P. 104; Annotation, 144 A. L. R. 898 and 905.

From *Durepo v. May,* 73 R. I. 71, 54 A. (2d) 15, 172 A. L. R. 429, we quote as follows:

"In the absence of stipulation, it is ordinarily held that a contract for the sale of land is to be performed within a reasonable time. What is a reasonable time depends upon the circumstances of each case. We see no reason why this rule should not be applied in the case of an option to sell land. Furthermore, the option in the instant cause was incorporated in a lease for the term of four years. Since the parties fixed no time for the exercise of the option, it is reasonable to infer that they intended that the option could be exercised at any time within the term of the lease, which, in the circumstances they apparently deemed a reasonable time."

■ We think, in the instant case, it was intended by the parties that the option could be exercised at any time within the term of the lease which was for a period of three years. It is not contended by defendants that the option agreement is lacking in consideration or that its duration is indefinite or uncertain.

Previously we have referred to the fact that the Taylors, in 1945 and again in 1946, notified the Wellses that they elected to exercise the option, granted them in the lease, to purchase the premises, and offered to pay the full purchase price, to wit, $4500 in cash. The notice in 1946 was contained in a letter from the attorney for the Taylors to the Wellses. When these notices were given, the Wellses did not object on the ground that the entire purchase price was tendered. They said nothing about a down payment. The only reason given by them for refusing to comply with the contract was that they did not want to sell the property.

In *Morris v. Ballard,* 56 App. D. C. 383, 16 F. (2d) 175, 49 A. L. R. 1461, defendant leased certain real estate situate in the District of Columbia to plaintiff.

This lease contained the following clause: "It is further provided that the said party of the second part is hereby given the privilege of purchasing said premises on or before July 1, 1923, for the sum of $18,000 on terms to be agreed upon." Several months after taking possession of the premises plaintiff advised defendant that he desired to avail himself of the right to purchase the premises in accordance with the terms of the contract and advised defendant that he was able to pay the agreed price therefor, either in cash or upon such terms as defendant might impose. The defendant, however, unconditionally refused to accept the tender or make the conveyance, whereupon plaintiff filed suit for specific performance of the contract. Defendant, in his answer, denied that any lawful tender had been made to him by plaintiff. In the language of the court, he "maintained, furthermore, that the provisions requiring that payment of the purchase price should be made 'on terms to be agreed upon' was indefinite and incomplete, and rendered the contract of sale unenforceable, in the absence of further negotiations and agreement as to the terms of payment, and claimed that, inasmuch as no such terms had ever been agreed upon by the parties, the court should not award a decree of specific performance." The District of Columbia Court of Appeals, in affirming the decree of the lower court awarding to plaintiff specific performance of the contract, observed:

"The agreement of the defendant, under the circumstances, to accept the agreed purchase price 'on terms to be agreed upon,' was in good conscience a stipulation that he would in fact agree with plaintiff upon reasonable terms of payment, and would not arbitrarily refuse to proceed with the sale. His refusal either to accept cash or to name any terms whatever was a wrongful violation of that

agreement, for which the plaintiff had no adequate remedy except a decree of specific performance."

The following excerpt from 2 Restatement, Contracts, § 370d, p. 674, is pertinent to our present discussion:

"A contract is not too uncertain for specific enforcement merely because the defendant is given a choice of performing in any one of several ways, whether formally expressed as an alternative contract or otherwise. He may properly be ordered to make the choice and to perform in accordance therewith; if he refuses, it may be proper for the court to make the choice and to decree specific performance.  *  *  *"

See also in this connection *Talamini v. Rosa,* 257 Ky. 228, 77 S. W. (2d) 627; 49 Am. Jur., Specific Performance, § 23, p. 37.

In *Shayeb v. Holland,* 321 Mass. 429, 73 N. E. (2d) 731, the lessee was given an option to purchase the leased property. The Supreme Judicial Court of Massachusetts, after pointing out that the "option was a material term of the lease and may well have been one of the factors that induced the execution of the lease by the lessee," and that it was for his exclusive benefit, stated:

"It is assumed that the parties were acting in good faith in executing the lease, and that they intended to proceed in a straightforward manner in carrying out the terms of the lease, including the option to sell if the lessee should exercise it, [citing authorities]; and it is for this reason that courts will, if reasonably possible, interpret a contract so as to make it a valid and enforceable undertaking rather than one of no force and effect."

■ In the instant case the indefiniteness, if any, relating to the payment of the purchase price revolves

around the question whether it was to be paid in cash or in installments. If the Wellses had the right to have it paid in installments, they waived that right by failing to object on that ground when the Taylors tendered the entire purchase price in cash. Under the circumstances stated, any indefiniteness in the contract regarding the payment of the purchase price ceased to exist.

■ In our opinion the written option, when construed in connection with the acts surrounding the tender of the purchase price by plaintiffs, is sufficiently definite for a court of equity to require the defendants to specifically perform their part of the contract. The oral agreement between plaintiffs and defendants alleged in the complaint did not vary or contradict the terms of the written option, with the possible exception of the manner of payment of the purchase price. The allegations relating to such oral agreement merely stated what we have already pointed out was the legal effect of the written option.

All the evidence relating to the negotiations and agreement between the parties was admitted without objection. It is now contended by the plaintiffs that, since the terms of the option were reduced to writing, parol evidence was inadmissible to vary or contradict its terms.

■ The rule which prohibits the modification of a written contract by parol evidence (§ 2-214, O. C. L. A.) "is not one merely of evidence, but is one of positive or substantive law founded upon the substantive rights of the parties." 20 Am. Jur., Evidence, § 1100, p. 963; 32 C. J. S., Evidence, § 851, p. 787; *Marks v. Twohy Bros. Co.*, 98 Or. 514, 527, 194 P. 675; *Willamette Production Credit Ass'n v. Day*, 167 Or. 451, 458, 118 P.

(2d) 1058. Evidence properly falling within the inhibition of the rule does not become admissible merely because it has probative value or is not objected to. *McGregor v. First Farmers'-Merchants' Bank & Trust Co.*, 180 Wash. 440, 40 P. (2d) 144, and authorities therein cited; *Bushnell v. Elkins*, 34 Wyo. 495, 245 P. 304, 51 A. L. R. 13; *Paulink v. American Express Co.*, 265 Mass. 182, 163 N. E. 740, 62 A. L. R. 506; *Elwell v. Borland*, 131 Me. 189, 160 A. 27; *Edrington v. Stephens*, 148 Miss. 583, 114 So. 387; *Loomis v. New York Cent. & H. R. R. Co.*, 203 N. Y. 359, 96 N. E. 748, Ann. Cas. 1913A, 928; *South Texas Implement & Machine Co. v. Anahuac Canal Co.*, (Tex.) 280 S. W. 521.

■ It is said in 32 C. J. S., Evidence, § 863, that there is a conflict of authority as to whether parol evidence which is inadmissible because it varies or contradicts a writing, but which has been admitted without objection, must on the one hand, be considered and given its due effect, or on the other hand, must be disregarded, in the trial court.'' The weight of authority supports the rule that such evidence should be disregarded. Especially is this true in those jurisdictions where it is held that the parol evidence rule is one of substantive law and not one of evidence merely. 64 C. J., Trial, § 243, p. 230; 32 C. J. S., Evidence, § 863, p. 796, and authorities last above cited.

■ In our opinion all the parol evidence which tended in any way to vary or contradict the written option should be disregarded and the written option should be specifically enforced.

The decree appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion. Neither party to recover costs in this court.