THOMAS NELSON, RESPONDENT, v. MASSMAN CONSTRUCTION COMPANY, A CORPORATION, APPELLANT.—91 S. W. (2d) 623.

Kansas City Court of Appeals.   January 27, 1936.

2

*Floyd E. Jacobs, Allen E. Cox* and *Charles L. Townsdin* for respondent.

*William Buchholz* and *Martin J. O'Donnell* for appellant.

CAMPBELL, C.—Plaintiff brought this suit to recover the reasonable value of services alleged to have been rendered by him to the defendant under an oral contract. The judgment was for plaintiff in the sum of $5500. The defendant has appealed.

The evidence shows that in the year 1926 defendant was engaged in railroad construction and river work; that plaintiff was experienced in highway work; that the parties, defendant acting through its president, H. J. Massman, entered into an oral contract concerning the matter of procuring highway construction work. The plaintiff testified that the parties agreed that defendant "was to furnish all the money necessary to buy the equipment, money to finance it to work with; I was to go and get the work and move the equipment on it and do the work, and after all the expenses of the labor, upkeep of the equipment and cost of bonds and insurance on the men, the profits were to go to pay for the equipment, and when the equipment was paid for I was to own one-half interest in it and any money made after the equipment was paid for I was to participate fifty-fifty, and the work was to go on as long as we were making money."

H. J. Massman, in his direct examination, testified concerning the contract as follows:

"Q. How did that going into business with him start? A. Mr. Nelson came to me and wanted me to go in the State highway grading business. I told Mr. Nelson from what I had known of other contractors and the way the work was going there was no money in it and I did not see any need of engaging in that class of work. He kept prevailing upon me, and what amount of money that he could make and what he could do and finally induced me to go along with him in the enterprise.

"Q. What were you to do? How were you and he to get any returns from the enterprise? A. The arrangement, or deal, that Mr. Nelson and I made was that I was to advance the whole enterprise; in other words, I was to furnish the money for him to buy the outfit, take care of his payrolls, make the bond, take care of the premiums on the insurance, and he was to get out and do the work, handle the work and run the job. We were to retain title in the outfit until such time as he made enough money to reimburse us for the entire amount of money that was spent, including equipment expense on the jobs and all operations. That was the understanding in the deal that we had.

"Q. What was said, if anything, about a drawing account? A. Nelson said that he 'did not have any money; he was up against it, and that he would have to have some money to live on,' and I told him, 'that is all right; go ahead, and what money he would need, why, we would take care of it;' which we did."

The witness Massman in his cross-examination stated that it was thoroughly understood that either of the parties "had the privilege of quitting at any time we seen fit." In his deposition he stated that it was the agreement that "in the event that the jobs were not making any money we could quit at any time we seen fit." He also said that the statements in his deposition were true.

Plaintiff, in the name of the defendant, obtained three road construction contracts and fully performed each contract. The largest of the contracts is known in the record as the Troy, Kansas, job, which was completed about September 15, 1927. When the Troy job was about half completed Massman went to the place of work and said to plaintiff that the job was losing money and that he was "going to quit" and sell the equipment. Plaintiff contended that the business was profitable and insisted it should be continued. Massman on that point, however, testified that plaintiff acquiesced in the discontinuance of the business. The defendant furnished the funds necessary to purchase the equipment, keep it in repair, pay the cost of the work and the sums received by plaintiff from the drawing account, the amount of which was considered as expense of operations. The defendant also received all the moneys earned under the contracts, including a rental of the equipment. While the Troy job was under construction the parties purchased a new caterpillar tractor for the sum of $5500. The plaintiff testified to the effect that the equipment was in better condition when the work was completed than it was in when the first job was begun.

The parties agree that the defendant was the owner of the equipment and that plaintiff had no ownership therein. After the construction work was completed the equipment was taken to a farm of the defendant and thereafter sold for the sum of $6625. The parties were in disagreement concerning the profits, if any, resulting from the enterprise. For the purpose of settling that controversy they agreed that C. G. Clary should audit their accounts and that each of them would be bound by the audit. The audit was made and as made disclosed that there was a job profit on each job; that the "total net profit from all jobs done by Massman Construction Co., and T. W. Nelson as of March 30, 1928, $13,991.24."

The defendant's first point is that the court erred in overruling its motion in arrest of judgment and its motion for new trial, for the reason that the petition failed to state facts sufficient to constitute a cause of action; and erred in refusing the requested peremptory in-

struction to find for the defendant. The petition alleged that on or about January 1, 1926, plaintiff was employed by the defendant to make estimates for it of the cost of grading jobs and to make bids for defendant on such grading jobs as might be offered to grading contractors and to manage, superintend, direct and control the actual work of performing such grading contracts as might be "awarded to and accepted by said defendants;" that in lieu of salary or compensation for his services plaintiff was to receive a sum equal to one-half of the net profits earned or received by defendant on all works managed, superintended and controlled by the plaintiff; that plaintiff would not be entitled to receive the said net profits derived from the works until such time as plaintiff's share of the products equal fifty per cent of the funds furnished by the defendant for the purchase of the equipment necessary in carrying on and completing the work; that plaintiff acted upon said agreement, performed faithful and valuable services thereunder for the defendant and that the defendant wrongfully discharged plaintiff from its employ and thereafter refused to carry out the terms and provisions of the contract and refused to permit the plaintiff to continue in its employ; that prior to October 1, 1928, plaintiff had faithfully performed his duties under the terms of said contract; that he had bid for, obtained, superintended and managed to successful completion on behalf of defendant a number of grading jobs from which there was derived a net profit of approximately $14,000; that the equipment purchased by the defendant cost approximately $19,000; that on October 1, 1927, the defendant without cause and in violation of the terms of said agreement refused to permit the plaintiff to further proceed under said contract and agreement, took possession of the equipment and refused to permit the plaintiff to continue to work under the terms of the agreement; that the reasonable value of the services rendered by him to the defendant during the period mentioned under the terms of said contract was of the reasonable value of $10,000, for which sum, less the sum of $1499.66, he prayed judgment.

The defendant's answer was a general denial, a counterclaim based upon the theory that the plaintiff had received from it $24,895, for which he had not accounted. In that counterclaim is the following:

"And for its cause of action against the plaintiff, this defendant, the Massman Construction Company, states that heretofore, to-wit: on or about the first day of January, 1926, the plaintiff and this defendant entered into an agreement by virtue of which it was stipulated and agreed that the parties hereto should engage in grading operations under contracts to be procured by the plaintiff and that the said plaintiff under the said agreement was to superintend, and manage, the grading operations under such contracts and that this defendant was to furnish the money by virtue of which such operations could

6

be carried on; that it was further agreed that this defendant should purchase equipment to be used in the said grading operations and that when the said equipment was paid for out of any profits or income that might be made out of the said grading operations, that the said plaintiff and this defendant should jointly own the said equipment.''

The fourth count of the answer is based upon the contention that the parties submitted their controversy to arbitration; that C. G. Clary was the arbitrator and that under his finding the enterprise sustained a loss in the sum of $3552.49 and prayed judgment enforcing the alleged award. The defendant in arguing this point insists that the petition shows that the contract was uncertain; that there was ''no mutuality as the alleged agreement did not bind defendants to accept contracts which might be awarded'' and hence had right as a matter of law to withdraw from the enterprise at any time. The contract, according to the plaintiff's contention, may be said to consist of two parts. The substance of the terms of the first part were that defendant would furnish the equipment and the funds needed in completing contracts and receive all of the money derived from the work until the profits of the enterprise were sufficient in amount to pay for the equipment, at which time plaintiff would become the owner of a one-half interest in the equipment; that plaintiff on his part would make estimates of the cost of work offered to contractors, make bids in the name of the defendant in effort to obtain such work and, if obtained, superintend and direct the work to completion; that plaintiff was to have a drawing account sufficient to meet his necessary living expenses but was to receive no other compensation unless and until the profits were sufficient to pay for the equipment. The second part of the contract contemplated that upon plaintiff becoming the owner of one-half of the equipment the business would continue as long as it was profitable. Though plaintiff pleaded both parts of the contract, that is, the entire contract, he sought recovery only under that part of it which we have designated as the first part and upon the theory that defendant did not have the right to withdraw from the enterprise so long as he, plaintiff, was performing his part of the undertaking, and that upon such withdrawal plaintiff had the right to recover the reasonable value of his services in an action in *quantum meruit*.

We find no uncertainty in the *terms* of the first part of the contract. The parties worked under that contract for about two years, during which time there was neither hint nor suggestion that they did not fully understand its terms and conditions. The mere fact that the contract did not by its terms fix the day on which it would terminate did not in and of itself render it uncertain. The claim that there was no mutuality in the contract for the reason that the defendant was not under duty to accept contracts which might be awarded over-

looks the fact that plaintiff was authorized to make bids in the name of the defendant. The bids which plaintiff was authorized to make were offers, the acceptance of which by the persons to whom they were made completed the contracts and obligated the defendant to perform them. If a bid was made to and accepted by public authority in Missouri it may be that some further action on the part of defendant was necessary to complete the contract but if the bid made by the plaintiff was accepted by such public authority and the defendant refused to perform according to the bid it would be subject to a penalty. Even though the contract was in its inception unilateral part performance rendered it bilateral. [Warren v. Ray County Coal Co., 200 Mo. App. 442, 207 S. W. 883; Martin v. Ray County Coal Co., 288 Mo. 241, 232 S. W. 149; Little Rock Surgical Co. v. Bowers, 42 S. W. (2d) 367 (certiorari denied 10-10-31).]

Defendant's second point is that a contract to continue employment or a business as long as it is profitable is indefinite and unenforceable. What we have said in discussion of the first point disposes of the second point.

The defendant under point one contends that the facts alleged in the petition show that the parties hereto were partners. We find no evidence tending to show a partnership relation. On the contrary, the evidence of both plaintiff and defendant is to the effect that there was no partnership. It may be that under the facts pleaded and proven that had sufficient profits been made to pay for the equipment and the parties thereafter continued in the work there would have been a partnership relation between them but so far as the present action is concerned there was neither pleading nor proof that there was such relation.

In determining the question as to whether or not the case was one for the jury we must consider the pleadings, the construction placed there by the parties as well as the theory upon which the cause was tried.

We need not cite authority in support of the proposition that litigants on appeal must adhere to the theory adopted in the trial court. We find nothing in the record indicating that in the trial the defendant contended that the contract was indefinite or unilateral. The defenses were that under the contract the defendant had the right to withdraw at any time in event the business was not profitable; that the business was not profitable and for that reason it terminated the relationship when the Troy job was about half completed; that plaintiff acquiesced in the withdrawal; that the controversy was submitted to an arbitrator and that the finding of the arbitrator was conclusive and that under the contract the parties as a matter of law were partners or that under the evidence it was a question for the jury to say whether or not they were partners.

8

The defendant pleaded its version of the contract and sought affirmative relief thereunder. It obtained instructions, to which reference will hereinafter be made, which submitted the case to the jury upon the theory adopted by the plaintiff. Upon considering the pleadings, the construction placed thereon by the parties and the trial theory, we will not convict the trial court of error in refusing the peremptory instruction requested by the defendant.

The defendant's next point is that the court erred in admitting the evidence of plaintiff's witnesses Ackley and Mosley, for the reason that they were not qualified to express an opinion as to the reasonable value of the plaintiff's services. The witness Ackley testified that he was engaged in general contracting which included grading, construction of bridges, culverts and highways; that he had been engaged in that kind of work for several years; that he was familiar with the reasonable value of the services of a man acting as a general superintendent in work of that character in the years 1926 and 1927; that though he had not employed a superintendent in that kind of work he had acted as his own superintendent;·that the reasonable value of plaintiff's services was $350 to $400 per month.

The witness Mosley testified that he was engaged in the business of constructing roads for the State Highway Department and the county; "roads of all character;'" that he had attended the engineering department of the Missouri University and belonged to the American Society of Civil Engineers. The witness further testified that he had acted as superintendent in construction work but had never employed a superintendent in that kind of work; that the reasonable value of plaintiff's services was $350 per month. Said witnesses had had large experience in work of the same general character as that in which plaintiff had been engaged, and we think that each of them was qualified to express opinion on the subject.

The next point is that the defendant's evidence shows that the enterprise lost $3552.49 which demonstrates "that, had the operations been continued, the plaintiff would have sustained a greater loss than he will sustain by the reversal of this judgment, and hence the case should have been taken from the jury." The defendant contends that if the operations had continued "the loss would have been greater than it actually was." The evidence was to the effect that loss, if any, was to be borne by the defendant and that the plaintiff would not sustain a loss. There is nothing in the record on which to base the point.

The defendant insists that the court erred in overruling its motion to transfer the cause to the equity docket, for the reason that the pleadings show that "equitable issues were involved." There is nothing in the pleadings showing that either party sought equitable

relief nor does the defendant point to any allegation in the pleadings which converted the case into one in equity.

The defendant urges that the trial judge made improper comments and remarks in the presence of the jury during the progress of the trial. The record discloses that during the trial the judge in effort to ascertain the contention of the defendant in respect to the collection of the money earned in the performance of the Albany job used the term "*hoi polloi.*" No exception was saved to the remark at the time it was made. Following the use of the term the judge stated his understanding of some of the evidence and concluded as follows: "Now, then, if the Massman people on this audit or any audit claim he did not turn in any money that he (plaintiff) got, you ought to set it up and then it would be pertinent to go into it; otherwise, I do not think it would." Thereupon, the defendant saved exception to the "ruling, action and remarks of the court." We do not believe the exception was timely, or that the statements of the judge prejudiced defendant's case.

The defendant's point 7 is as follows:

"The trial court erred in that the trial judge commented on the evidence and erroneously stated the evidence and manifested prejudice in favor of plaintiff throughout the trial and for said reasons the defendant was deprived of its right to have a fair and impartial trial and hence the resulting judgment amounts to a deprivation of defendant's property in violation of the commands of Section 30 of Article 11 of the Constitution of Missouri and Section 1 of the XIV Amendment to the Constitution of the United States."

Following the point quoted are excerpts from the bill of exceptions which cover about forty-nine pages of the printed record. The defendant has not called attention to any error appearing in the excerpts referred to, hence the question is not here for review.

The defendant contends that the court erred in directing the jury to find for the plaintiff on the defendant's counterclaim. The counterclaim as above stated set forth the defendant's version of the contract and alleged that plaintiff had received $24,895, for which he had not accounted. There was no evidence to sustain the charge that plaintiff had received money for which he had not accounted. The parties agreed that Clary should audit the accounts and that they would accept his report as correctly reflecting the result of the operations. The report, among other things, disclosed that plaintiff had received no money except from the drawing account, a total of $2336, which sum was included in the audit as expense of operation.

In plaintiff's instruction No. 2 the court told the jury that "no partnership existed between the plaintiff and defendant." The defendant argues that the instruction was erroneous for the reason that a partnership existed between the parties. We have held that the

evidence disclosed that there was no partnership relation from which it follows that the instruction was proper.

The defendant claims that the court erred in giving plaintiff's instruction No. 3, for the reason that it was in direct conflict with defendant's instruction No. 5, to the giving of which plaintiff saved no exception. Said instruction No. 3 is as follows:

"The court instructs the jury that in arriving at your verdict you shall not take into consideration the question of whether or not the defendant may or may not have suffered any loss by reason of equipment and the grading outfit purchased and sold by it."

Said instruction No. 5 is as follows:

"The court instructs the jury that if you believe and find from the evidence that the business in which the parties were engaged, as conducted and operated by the said parties, was unprofitable at the time of its discontinuance, then your verdict must be for the defendant."

Instruction No. 3 was a correct statement of the law under the evidence in the case. The contract did not provide that plaintiff would suffer a loss by reason of the purchase and sale of the equipment. Plaintiff was entitled to receive one-half of the equipment, regardless of its condition, when the profits were sufficient to return the cost thereof. Defendant's instruction No. 5 was based upon the defendant's contention that the business was unprofitable and for that reason it had right to discontinue the venture at any time. The question as to whether or not the business was profitable or unprofitable was therefore, under the defendant's contention, a question for the jury and that question was fairly submitted in the defendant's instruction No. 5.

The defendant assigns error to the action of the court in refusing its requested instructions Nos. 8, 10, 11, 12, 13, 15, 16 and 17. Each of said instructions was based upon the theory that the plaintiff and defendant were partners or that there was evidence tending to show that they were partners. We again say that there was no evidence tending to show a partnership relation and for that reason the instructions were properly refused.

Defendant's instruction 14 sought to have the question submitted to the jury as to whether or not there was a new contract or new arrangement or novation of the original contract. There was no evidence upon which to base that instruction.

The defendant requested an instruction which said that there was another action pending between the same parties for the same matters as were involved in the present action and that, therefore, its plea in abatement must be sustained. The evidence shows that the former action referred to in the pleadings had been dismissed.

The defendant sought in its refused instruction 19 to have the court tell the jury to affirm the award of the arbitrator Clary. The parties agreed that Clary should audit their accounts; that they would

"stand by" that audit but they did not agree that their rights in the enterprise could be determined by Clary. Clary was an accountant, not an arbitrator.

The last point presented in the defendant's brief is that the court erroneously sustained the objection to the argument of the defendant's counsel. Defendant's counsel in argument said that the enterprise was conducted at a loss because the equipment cost $19,000 and the profits were only $13,000, thus, in effect, saying that plaintiff must be charged with a loss. The court sustained an objection to the argument. The argument was objectionable because in conflict with plaintiff's instruction No. 3.

Plaintiff's instruction No. 1 covered the entire case and allowed a verdict for plaintiff upon the jury finding that the contract was made as claimed by plaintiff; that plaintiff performed his part of the contract and defendant withdrew from the enterprise in violation of the terms of the understanding. This instruction is not criticized by the defendant.

The defendant obtained instruction 4 as follows:

"The court instructs the jury that unless you believe and find from the evidence that the plaintiff has established by the greater weight of the credible evidence in the case all the issues submitted to you in instruction No. 1, then your verdict must be for the defendant."

Clearly said instruction No. 4 in legal effect told the jury that in event it found that the plaintiff had established by the greater weight of evidence all of the issues submitted in plaintiff's instruction No. 1 the verdict must be for the plaintiff. Defendant's instructions Nos. 4 and 5 clearly indicate the theory upon which it defended the action. The judgment was for the right party and should be and is affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.