**AUSTIN & BASS BUILDERS, INC.,**
Plaintiff-Respondent,

v.

**Lawrence E. LEWIS and Ethel I. Lewis,**
Defendants-Appellants.

No. 23341.

Kansas City Court of Appeals.

Missouri.

June 5, 1961.

---

1. Cf. Robertson v. Tapley, 48 Mo.App. 239.

Lucian Lane, W. M. Thurman, Kansas City, for appellants.

Terry & Welton, Jack C. Terry, Gaylord Wilkins, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for breach of an alleged real estate contract. Plaintiff had a verdict and judgment for $6,000. Defendants have appealed.

Count I of the petition alleged that defendants as sellers entered into a written contract to sell certain real estate to plaintiff; that plaintiff performed all its obligations and covenants provided in the written contract, including making payment of $1,000; that defendants failed and refused to perform the written contract in that they could not give good title and were obligated to repay the $1,000. Plaintiff prayed that defendants be directed to repay the $1,000. This Count was dismissed by plaintiff at the trial.

Count II alleged that on April 8, 1959, defendants were in possession and claimed to be the owners of a tract of land in Jackson County, Missouri, and offered to sell it to plaintiff for $58,587.21 and an agreement in writing was entered into between plaintiff and defendants; that plain-

tiff performed all of its obligations under said contract but that defendants breached the contract by refusing to deliver a warranty deed conveying the property free of incumbrances as provided in the contract. The petition then alleged that plaintiff had spent time and money in furtherance of the object of the contract, that it was forced to buy other land at an increased price and its reputation and standing as a builder and its credit were damaged and plaintiff lost time in its business and prayed damages in the sum of $50,000.

Count III was similar to Count II but added the allegation that defendants intentionally, maliciously and fraudulently borrowed money and put a mortgage of $40,000 on the land so that they could not give clear title and prayed for actual damages of $50,000 and punitive damages of $50,000. The Court refused to submit any issue of punitive damages.

The contract purports to have been entered into on April 8, 1959 between "Lawrence E. Lewis and Ethel I. Lewis (Husband and Wife) the seller, and Austin and Bass Builders, Inc., the buyer." It recites that "the seller" has sold and agrees to convey the following described real estate situated in Jackson County, Missouri: "All of Lots 9 thru 28 and 30 thru 34 Woodridge Subdivision, Independence, Missouri", for the price of $31 per front foot, to be paid by the buyer as follows: $1,000 at the signing of the contract, the receipt of which "is acknowledged by the seller and which is deposited with Lawrence E. Lewis and Ethel I. Lewis (Husband and Wife)." The balance to be paid in the following manner: "$4,000 cash on delivery of deed as herein provided and starting of improvements. Balance shall be paid at the rate of $31 per front foot at the closing of loan on constructed houses less $200 per lot which is the consideration paid in the down payment." The seller agreed to deliver to the buyer a warranty deed, "properly executed and conveying said property free and clear from all liens and incumbrances whatsoever."

The contract was signed only by Lawrence E. Lewis and Kenneth Bass as an individual. The plaintiff corporation was not in existence on the date of the contract. It is conceded that defendant Ethel I. Lewis did not sign the contract. It is also admitted that on January 12, 1960, Mrs. Lewis obtained a cashier's check for $1,000 payable to Austin & Bass, which was a repayment of the $1,000 paid by Kenneth Bass to Mr. Lewis on April 8, 1959, and that Austin & Bass Builders, Inc., endorsed, deposited and retained this $1,000.

Kenneth Bass testified that he was president of Austin & Bass Builders, Inc.; that he and Mr. Austin were thinking about organizing a corporation in the latter part of 1958 or early in 1959; that in March, 1959, they heard that Mr. Lewis had some land for sale and contacted him four or five times in March in Mr. Lewis' office; that Mrs. Lewis was present ninety percent of the time, but did not discuss the terms of the agreement. She was just listening. That during March they decided to incorporate and so advised Mr. and Mrs. Lewis. The certificate of incorporation was dated April 14, 1959, and the certificate of authority to commence business was dated April 29, 1959. Mr. Bass also testified that after signing the contract they got material ready for F.H.A.; that at Mr. Lewis' request, they asked the Queen City Engineering Company to make certain plans for street layout, sewer layout, etc.; that they got the Queen City Engineering Company to make plat plans for which they paid $155; that they employed an architect to draw house plans and paid him $154; that they had numerous meetings with Mr. Lewis with regard to the subdivision being approved by F.H.A.; that they submitted F.H.A. applications and specifications to the City Bond and Mortgage Company for approval; that they contacted numerous contractors; that they paid $450 to the City Bond and Mortgage Company for ten F.H.A. commitments.

In the latter part of July Mr. Lewis called Mr. Bass. In response to that call

Mr. Bass went to the Lewis home. Mr. Lewis had a letter from the F.H.A. stating that certain additional requirements be met before the subdivision would be approved. Mr. Lewis then stated that he might have to put a mortgage on the property and, if so, could not give clear title to any part of it. Mr. Bass had plaintiff's attorney write a letter to Mr. Lewis and they had a further meeting talking about the contract, but could never get anywhere. He testified that at this meeting Mr. Lewis said he had put a mortgage on the property and the only way he could sell it would be to have cash for the whole thing, and Mrs. Lewis stated that they could not go through with the contract without all the money. Mr. Bass testified that he spent approximately two months' time from the middle of March to August 3 working on these matters which he valued at $10 per hour; that they found twelve lots at 42nd and River in Independence for which they paid $2,750 per lot compared to $2,140 at which the Lewis lots were priced.

Mr. Lawrence Austin, Secretary-treasurer of Austin & Bass Builders, Inc., testified that he attended two or three meetings where Mr. Bass and Mr. and Mrs. Lewis were present, but he was more or less an observer because he wasn't familiar with real estate; that he attended several conferences Mr. Bass had with the F.H.A. and City Bond and Mortgage officials and interviewed subcontractors. He said he spent two or three weeks' time on the project and that his time was worth $10 per hour; that about the last week of July plaintiff received a check from the Lewises for $1,000 but it was not signed; that when this check was returned to Mr. Lewis the latter said, "My wife forgot to sign it."

We will set forth other portions of the evidence as we take up the assignments of error made by defendants.

██ Defendants' first contention is that the trial court erred in not holding that, as a matter of law, the alleged contract "was void for uncertainty and want of mutuality in that the payment of the purchase price was contingent on 'starting of improvements' and 'closing of loan on constructed houses,' and, since there was no obligation on plaintiff to start improvements or to build houses, the time of payment could not be ascertained and there was no obligation to pay." The evidence stands undisputed that defendants accepted the $1,000 as a down payment under the contract. The evidence also shows that defendants went over the plat plans submitted by plaintiff and approved the same. Together with plaintiff they made F.H.A. applications. They appeared before the Planning and Zoning Commission with plaintiff. And during the time those things were being done there was neither hint nor suggestion from defendants that they did not fully understand the terms and conditions of the contract. Our Supreme Court has held that mutuality of obligation is not necessary if there is consideration other than a promise. Schonwald v. F. Burkart Mfg. Co., 356 Mo. 435, 202 S.W.2d 7; Schmidt v. Morival Farms, Mo.Sup., 240 S.W.2d 952, 957. And even though the contract was in its inception unilateral, part performance rendered it bilateral. Nelson v. Massman Const. Co., 231 Mo.App. 1, 91 S.W.2d 623, 627 (citing cases). We agree with the trial court's holding that the contract was not void for want of mutuality. And, since defendants claim that the contract is void for uncertainty is based upon the premise of lack of mutuality, we rule the contention against defendants.

Defendants next contend that the court erred in refusing to hold, as a matter of law, that no action could be maintained on the alleged contract for the reason that plaintiff's action is based entirely upon an alleged real estate contract which shows upon its face that the real estate involved was owned by defendants as an estate by the entirety, and that "no contract enforceable under the Statute of Frauds resulted unless signed by both."

This is not a suit for specific performance, but an action for damages. An agreement to convey, though invalid to affect the title to real estate in whole or in part, may yet be valid between the parties as a basis for the recovery of damages by reason of its breach. The general rule of law is that the agency of the husband for the wife may be shown by direct evidence or by such facts and circumstances as will authorize a reasonable and logical inference that he was empowered to act for her or that she ratified his unauthorized acts. 41 C.J.S. Husband & Wife § 70, p. 548. On its face the alleged contract purports to be the joint contract of "Lawrence E. Lewis and Ethel I. Lewis (husband and wife)." Mrs. Lewis testified that she and Mr. Lewis had been in the contracting business for 15 years; that the bank account at the Linwood Bank was "our construction account, requiring two signatures, his and mine;" that she was an active partner in the business known as the Lewis Construction Co.; that the original deposit check was paid to "us" and deposited in "our" account; that when Mr. Lewis gave her the check for $1,000 he told her that Mr. Bass was buying the lots at 39th and Noland; that Mr. Lewis told her of the contract with "Austin & Bass shortly after it was written"; that she had no objection to selling the property; that she deposited the check from Austin & Bass and purchased the cashier's check for refund in the "regular course of business" of the Lewis Construction Company. Mr. Lewis admitted that Mrs. Lewis was present at a meeting between Austin & Bass and himself on April 20, 1959, and that she got out the plat plans from the file. Mr. Bass testified that he kept Mr. and Mrs. Lewis fully informed as to what plaintiff was doing and at no time did they ever tell him that they did not intend to carry out the agreement; that at a meeting in August of 1959, he asked Mr. and Mrs. Lewis to sell the property as per the agreement and they stated to him that they had mortgaged the property and that at this time they could only sell for cash; that Mrs. Lewis stated at two meetings after July 30, 1959, that "she didn't see how they could go through with the deal without more money." All of which tends to show that she had previously given her assent to the contract. In order to show a course of conduct by defendants plaintiff offered in evidence sixteen real estate contracts between defendants and other persons. In all of those contracts the names "Lawrence E. Lewis and Ethel I. Lewis" appear as sellers. In twelve of those contracts only the signature of Lawrence E. Lewis appears. Yet the evidence disclosed that "the majority of these contracts later culminated in a transfer of property to the buyers named in the contracts"; that "Mrs. Lewis, of course, signed the deeds." We are of the view that there was substantial evidence of an agency and thus the question was one to be submitted to the jury.

Defendants' third contention is that the court erred in failing to hold that there was no contract between plaintiff Austin & Bass Builders, Inc., and defendants for the reason that there was no such corporation in existence at the date of the alleged contract. It is conceded that the corporation, Austin & Bass Builders, Inc., had not yet completed its corporate organization at the time the contract was signed. However, the testimony was that the corporation immediately after securing its charter held a meeting of its directors at which time the contract, signed by Bass with defendants, was accepted, approved and ratified as a corporate act. It has been universally held that when a corporation adopts and ratifies the contract of its promoter or organizer, such contract becomes the contract of the corporation, and this is especially so when there is part performance by the corporation under the contract, Schmidt v. Morival Farms, supra. The contention lacks merit.

Defendants next contend that the court erred in refusing to hold that the acceptance by plaintiff of the cashier's check for $1,000 constituted a rescission or abandonment by plaintiff of the alleged contract.

The suit was filed on September 10, 1959. The cashier's check was dated January 10, 1960. A rescission of a contract involves restoring the status quo of the parties. Ungerer & Co. v. Louis Maull Cheese & Fish Co., 155 Mo.App. 95; 134 S.W. 56. And to constitute an abandonment of rights under a contract, an actual intention to abandon must exist. 17 C.J.S. Contracts § 412, p. 899. The evidence is clear that when plaintiff accepted the check it had no intention of abandoning or surrendering its rights growing out of defendants' breach of the contract. Defendants waited until plaintiff had secured F.H.A. approval, made plat plans, secured commitments, secured zoning permits—in fact everything necessary to commence building—thus securing many benefits which increased the value of their property, then attempted to rescind the contract by paying back the down payment and completely ignoring the damages suffered by plaintiff because of defendants' failure to perform. Defendants made no attempt to restore plaintiff to status quo. This contention also lacks merit.

█ Under Point V defendants contend that the court erred in failing to hold under all the evidence that plaintiff failed to show performance on its part of the required terms of the alleged contract and failed to show that there was any breach thereof by defendants. We have heretofore stated the facts surrounding this transaction and it would serve no useful purpose to repeat them here. In our opinion there was substantial evidence tending to support the jury's finding of performance by plaintiff and a breach by defendants of the contract. Thus we rule the point against defendants.

█ Under Point VI defendants claim that the trial court committed error in admitting certain evidence. Under subhead (a) of this assignment complaint is made specifically of evidence of negotiations and dealings between Mr. Austin and Mr. Bass and defendants before and following the date of the contract. It must be kept in mind that the position of defendants at all times during the trial was (a) that there was no contract, and (b) that if there was a contract defendant Ethel I. Lewis was not a party to it. It was obvious that Mrs. Lewis did not sign the contract, so it became necessary for plaintiff to prove that she actually participated in it and became a party to it. This plaintiff had a right to do. Baker v. Thompson, 214 Mo. 500, 114 S.W. 497. Under subhead (b) defendants complain of "private conversations and dealings between Mr. Austin and Mr. Bass concerning decision to form a corporation." The fact is that all of the testimony in regard to conversations and acts of Austin and Bass were preliminary questions leading up to the introduction of plaintiff's Exhibits 6 and 7, which were the certificate of incorporation and authority to do business. In subheads (c) and (d) complaint is made of the admission of plaintiff's Exhibit 14, being sixteen contracts of sale which Lawrence E. Lewis had signed in other transactions involving real estate transfers and in twelve of which the signature of Ethel I. Lewis does not appear. The contention ignores the fact that Mrs. Lewis testified that the firm of "Lawrence E. Lewis, Contractor", was a partnership, and that she and Mr. Lewis were in the business together; that Mr. Lewis signed contracts for the sale of real estate which she later confirmed and signed the warranty deed relating thereto. The contracts attached to the Exhibit tended to show that in the general course of the business of Lawrence E. Lewis and Ethel I. Lewis, d/b/a Lawrence E. Lewis, Contractor, Mr. Lewis acted as agent for his wife. They also tended to throw light upon the question of whether he also acted as her agent in the instant transaction. Under subhead (e) defendants complain of the admission of the record of testimony given by Mr. Lewis before the Jackson County Court and the Planning Commission, wherein Mr. Lewis twice stated, under oath, that he had sold the property in question to plaintiff. It was proper to receive these admissions. They tended to refute the testimony of Mr. Lewis given at the trial which was to the

effect that he signed the contract merely as an accommodation to Mr. Bass.

Under Point VII defendants assert that plaintiff having received the return of the $1,000 down payment elected to treat the contract as "void and by such election of remedies was precluded from further maintaining this further action for breach of contract." As we have pointed out in discussing defendants' fourth contention, the $1,000 down payment was not returned until four months after this action was instituted, and that under the evidence we would not be justified in holding as a matter of law that plaintiff had abandoned the contract. All three Counts of the petition were based upon a breach of the contract. The doctrine of election of remedies applies only when one remedy is inconsistent with another. Brown v. Essig, Mo. App., 1 S.W.2d 855. This is not true here. Also asserted under this point is the claim that the court erred "in admitting testimony of plaintiff's activities and dealings with third persons and expenditures after date of contract as evidence of special damages, since these matters were not a necessary part of performance of the contract by plaintiff." The evidence clearly shows that both plaintiff and defendants, the plaintiff through its President, Mr. Bass, and defendants by the action of Mr. Lewis, with the acquiescence of Mrs. Lewis, were aware of what plaintiff was doing in order to proceed with the building of houses upon the land which defendants had sold it. The defendants were not only aware of what plaintiff was doing, but cooperated with it and even requested plaintiff to do particular acts for them such as appearing before the Zoning Commission, and having plaintiff, through its officer, Mr. Bass, follow up on the F.H.A. requirements imposed upon the defendants in regard to readying the land for building purposes. Yet, despite all of the evidence which clearly showed plaintiff's reliance upon defendants' acts prior to the breach of the contract by defendants, they now say that none of the items of damage claimed by plaintiff, and specifically pleaded by it, could have been contemplated by the parties or were necessary consequences of the alleged breach of contract. The point lacks merit.

In assignment VIII defendants claim that Instruction No. 1 was prejudicially erroneous. They divide this point into six separate subdivisions under which they assert that the instruction submitted questions of law, failed to hypothesize and require findings of fact as to performance and breach, and omitted important elements of the case. We do not find the instruction subject to these criticisms. They also say the instruction seeks to hold Ethel I. Lewis a party to the contract merely because she knew about it. The fact is the instruction sets out all facts necessary to show that Mrs. Lewis not only knew of the contract, but that she participated in the same by accepting and depositing the down payment in a joint account; issued one check for refund and purchased the cashier's check for the final refund. Defendants further assert that the instruction "simply ignores the requirements of the Statute of Frauds." The fact is the instruction clearly hypothesizes the necessary requirements to take the case out of the Statute of Frauds and leaves such facts to the determination of the jury.

Finally, it is contended that Instruction No. 3, which dealt with the measure of damages, is erroneous. Defendants cite the case of Duncan v. Townsend, Mo. App., 325 S.W.2d 67. In that case the special damages sought were not specially pleaded. This court there held that had the special damages been pleaded, the plaintiff would have been entitled to an instruction similar to Instruction No. 3. In the instant case plaintiff alleged as special damages each and every item instructed upon.

Finding no error in the transcript prejudicial to defendants the judgment is affirmed. All concur.