## GEORGE E. WILKINSON, Respondent, v. EDGAR D. MISNER, Appellant.

### St. Louis Court of Appeals, June 30, 1911.

1. **PLEADING: Demurrer Ore Tenus.** An objection to the introduction of any evidence on the ground a petition is insufficient is tantamount only to a challenge of the petition. after verdict.

2. **CONVERSION: Pleading: Sufficiency of Petition: Aider by Verdict.** While a petition, in an action of trover, should show on its face that plaintiff had the right of possession as well as the right of property in the goods converted, at the time of the conversion, a petition is good after verdict if such facts are necessarily implied or may be reasonably inferred from other pertinent allegations therein.

3. ———: **What Constitutes.** Any wrongful exercise of dominion by one person over the goods and chattels of another which is inconsistent with and exclusive of the owner's rights therein amounts to a conversion.

4. ———: **Pleading: Sufficiency of Petition.** A petition, in an action of trover, alleged that while plaintiff was in possession of certain stock certificates, which he held as collateral security for an indebtedness, he was told by defendant, who was the owner of the stock, that if plaintiff would surrender the certificates to him, he would sell them and pay plaintiff five thousand dollars of the proceeds on the indebtedness, and that if he did not succeed in so doing within thirty days, he would return the certificates to be held as before; that plaintiff, induced solely by these representations and relying upon them, delivered the certificates to defendant for the purpose mentioned, and defendant, having obtained possession, unlawfully converted them, in that he disposed of them to another, for his own use, to plaintiff's damage in the sum of $15,000. The petition was challenged by demurrer *ore tenus* on the ground that it did not expressly aver that plaintiff either had possession or the right of possession of the certificates. *Held*, that inasmuch as the petition avers that plaintiff was in possession of the certificates as pledgee and delivered them to defendant for the particular purpose mentioned, it is to be implied that plaintiff was entitled to the possession at the time of the conversion, except for the right of defendant to deal with them in accordance with his agency, and it appearing that defendant did not perform his duty as agent but intead converted the certificates to his own use, the petition was sufficient, 'after

verdict, although it did not expressly allege that plaintiff had either pofession or the right of possession of the certificates at the time of the conversion.

5. **ESTOPPEL: Taking Advantage of Own Wrong.** Every one is estopped from taking advantage of his own wrong.

6. **CONVERSION: Pleading: Immaterial Variance.** Where, in an action for the conversion of stock certificates held by plaintiff as collateral security, plaintiff alleged that he delivered the certificates to defendant on the latter's promise to sell the same within thirty days and pay plaintiff $5000 of the proceeds, or return the certificates, and it appeared that defendant obtained possession of the certificates and sold the same several months afterwards and converted all of the proceeds to his own use, the fact that the evidence failed to show an agreement to return the certificates within thirty days was an immaterial variance, which the court was required to disregard, by the express provisions of section 1847, Revised Statutes 1909, since the law would imply an obligation to return the certificates within a reasonable time if no sale was made, and the averment that they were to be returned to plaintiff within thirty days, if not sold, was therefore immaterial and could be treated as surplusage.

7. **PLEDGES: What Constitutes.** To constitute a pledge of personal property, there must be a contract whereby the property is held as security, but it is not essential that such a contract shall be express, as it may be implied from the circumstances of the case, if it appears that the minds of the parties met with respect to the same subject-matter and consented to the same thing for a sufficient consideration.

8. ———: ———: **Transferring Security.** In the absence of a new agreement to that effect, a pledgee may not withhold the pledged property as collateral security for a debt other than that for which the pledge was originally made, and the mere withholding of such property by the pledgee with a declaration that it will be withheld until a debt is paid, does not constitute a contract of pledge, when nothing more appears than that the owner of the property did not object at the time.

9. **CONTRACTS: "Consent:" Definition.** The word "consent" in the law of contracts means concurrence of wills.

10. **PLEDGES: Collateral Security: Transferring Security: Consent of Pledgor: Conversion: Instructions.** Defendant pledged certain certificates of stock to secure a loan to himself and another, and thereafter substituted notes of a corporation for the debt, and afterwards obtained possession of the certificates, under an agreement to return them within thirty days in case they were not sold and if sold to pay plaintiff $5000 of the

proceeds.  Defendant sold the stock and converted the proceeds to his own use.  Both the substituted note and a receipt which defendant gave for the certificates when they were surrendered to him for sale recited that the certificates were deposited as collateral security for the note.  In an action for conversion of the stock, defendant was permitted to dispute this recital in the note and receipt by testifying that the certificates were pledged to secure the original note only.  Defendant requested an instruction that if the jury believed the certificates were pledged to secure the original note and did not find that thereafter a new agreement was entered into between the parties by which it was agreed that the certificates should be held as collateral security for the substituted note, then plaintiff was not entitled to recover.  The court modified the instruction so as to permit of a finding for plaintiff if the jury found that defendant (the pledgor) consented that plaintiff should hold the certificates as security for the substituted note.  *Held,* that in view of the proof and issues made, the jury could not have found for plaintiff under the words added to the instruction, without finding that defendant agreed or contracted to that effect, and hence the modification was not erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Johnson, Houts, Marlatt & Hawes* for appellant.

(1)  This being a suit in conversion, the petition did not state facts sufficient to constitute a cause of action in this, that it failed to allege or show that, at the time of the alleged conversion, plaintiff had possession of, or the right of possession to, the stock. Bank v. Mill & Land Co., 152 Mo. 156; Golden v. Moore, 126 Mo. App. 522; Schwald v. Brunjes, 139 Mo. App. 516.  (2)  The modification by the court of defendant's instruction No. 2 was erroneous in that, as modified, it did not require the jury to find an agreement between plaintiff and defendant that defendant's stock should be collateral to the notes introduced in evidence, but, on the contrary, permitted the jury to find for the plaintiff if defendant "consented" that said stock should be held as collateral.  It requires an

"agreement" in order to constitute a pledge. 22 Am. and Eng. Ency. Law, p. 85; The Southworth Co. v. Lamb, 82 Mo. 242; Taylor v. Jones, 3 N. Dak. 235; Sharmer v. McIntosh, 43 Neb. 516; Johnson v. Smith, 11 Humph. 398; Janvrien v. Fogg, 49 N. H. 340; 31 Cyc., p. 787.

*Abbott, Edwards & Wilson* for respondent.

(1) All of the essential averments are expressed or implied in the petition upon which the suit is based. Battel v. Crawford, 59 Mo. 215; Johnson v. Railroad, 22 Mo. App. 597; Withers v. Bank, 67 Mo. App. 115; Redpath Bros. v. Lawrence, Manning & Cushing, 42 Mo. App. 106. (2) The modification by the court of defendant's instruction was not erroneous, as it made no substantial change therein. The word "consent," as used in the instruction, of which complaint is made, is equivalent to the word "agree." Black's Law Dictionary, p. 249; Century Dictionory.

NORTONI, J.—This is an action in the nature of trover as for conversion. Plaintiff recovered a verdict of $5000, and defendant prosecutes the appeal.

In so far as important to state it, the petition avers that plaintiff was, on January 28, 1908, in possession of two certificates of stock of the Renfrow Briquette Machine Company, of the par value of $15,000, which he held as collateral security to a certain indebtedness evidenced by notes given to him in consideration of a loan of money; that, on the 29th of January, 1908, defendant (who was the owner of the stock, subject to the pledge) represented to plaintiff that if plaintiff would surrender the shares to him, defendant would sell the same for cash and pay plaintiff $5000 of the proceeds thereof on the indebtedness, and that if he did not succeed in so doing within thirty days, he would return the certificates of stock to plaintiff to be held as theretofore. Plaintiff says that, induced

solely by such representations of defendant and rely-
ing thereon, he delivered to defendant the shares of
stock for the purpose mentioned, and that defendant,
so having obtained possession thereof from plaintiff,
unlawfully converted the same, in that he disposed
of same to another for his own use, to the damage of
plaintiff in the sum of $15,000, for which amount judg-
ment is prayed.

It is argued the petition is insufficient for the rea-
son it does not expressly aver that plaintiff either had
possession or the right of possession of the shares of
stock mentioned at the time of the conversion. There
was no demurrer interposed to the petition, and the
objection was made *ore tenus* to the introduction of
evidence thereunder, which is tantamount only to a
challenge of its sufficiency after verdict. Though it be
true that plaintiff must have the right of possession
as well as a right of property in the goods converted
at the time of the conversion and that the petition
should so show on its face, no one can doubt the suffi-
ciency of the pleading after verdict in respect of the
right of possession at that time, if such is necessarily
implied or may be reasonably inferred from other per-
tinent allegations therein. [Munchow v. Munchow, 96
Mo. App. 553, 70 S. W. 386.] Any wrongful exercise
of dominion by one person over the goods and chat-
tels of another which is inconsistent with and exclu-
sive of the owner's rights therein amounts to a con-
version thereof. If one wrongfully deals with the
property of another by disposing of it to a third per-
son without right, as if it were his own, he is guilty of
conversion. [2 Cooley on Torts (3 Ed.), 859, *et seq.*;
Withers v. Lafayette County Bank, 67 Mo. App. 115,
119; Miller v. Lange, 84 Mo. App. 219.] It appears
from the averment of the petition that defendant was
entrusted by plaintiff with the certificates of stock for
a particular purpose and that he transferred them to
another and converted the proceeds thereof to his own

use. When all of the allegations are considered together, it is necessarily implied therefrom that, instead of either paying plaintiff the five thousand dollars as agreed or returning the stock to him, defendant appropriated the proceeds thereof to his own use after the sale was made. If such be true, and the evidence tends to prove that it was, then defendant converted the stock to his own use, for he not only violated the primary duty of the agency but actually converted the property as well. [Boldewahn v. Schmidt, 89 Wis. 444; Weaver v. So. R. Co., 135 Mo. App. 210, 115 S. W. 500, and authorities, supra; 22 Am. and Eng. Ency. Law (2 Ed.), 872, 873.] The petition avers plaintiff was in possession of the stock and held it as collateral security for an indebtedness and delivered it to defendant for the particular purpose mentioned, and this implies that plaintiff was entitled to the possession at the time of conversion, except for the right of defendant to deal with it in accordance with his agency. It appearing from the petition, too, that defendant did not adhere to the agency involved but instead sold the stock and converted the proceeds to his own use, it is necessarily implied therefrom that plaintiff was entitled to the possession of the certificates at the time of the conversion as defendant had no right in the premises whatever except to perform the agency delegated. Everyone is estopped from taking advantage of his own wrong. [Broom's Legal Maxims, 279.] A petition not challenged by demurrer is to be considered sufficient after verdict, though it may be short in express averment, if the facts not alleged are necessarily implied or may be necessarily inferred from others set forth. In this view, the petition is obviously sufficient. [Munchow v. Munchow, 96 Mo. App. 553, 70 S. W. 386; Thomasson v. Merc. Ins. Co., 217 Mo. 485, 116 S. W. 1092; s. c., 114 Mo. App. 109, 89 S. W. 564,

1135; see, also, Golden v. Moore, 126 Mo. App. 518, 104 S. W. 481; Case v. Fogg, 46 Mo. 14.]

It is argued the court should have directed a verdict for defendant for the reason there is no direct proof of an agreement on the part of defendant to return the certificates of stock to plaintiff within thirty days after receiving them in the event he failed to negotiate a sale and pay plaintiff five thousand dollars on the indebtedness for which the certificate of the stock was held as collateral. We are not impressed with this argument, however, for the reason that, though the petition averred an express agreement on the part of defendant to return the stock in the event he was unable to sell it and realize as much as five thousand dollars to pay on the indebtedness, the matter is unimportant if an actual conversion otherwise appears. The proof is quite conclusive that plaintiff held the stock as collateral security to loans amounting to something over $10,000 which he had made to the Illinois Coalette Fuel & Mining Company, a corporation, of which defendant was secretary and one Harford was president. Defendant and Harford first borrowed $3500 from plaintiff on their individual note for the purpose of promoting and financing the Illinois Coalette Fuel & Mining Company and pledged the stock involved here as collateral security for that loan. Soon thereafter the corporation mentioned was organized and the individual note of defendant and Harford surrendered and that of the corporation, executed by Harford as president and defendant as secretary, was given to plaintiff instead for the same amount. On this note is indorsed an agreement to the effect that the same collateral, or the shares of stock involved here, should be held by plaintiff as security therefor. Afterward, plaintiff made other loans to the Illinois corporation at the instance of defendant and Harford, in all amounting to something near $10,000, under an agreement, according to the evidence of both

plaintiff and Harford, that plaintiff should hold the same certificates representing $15,000 in stock of the Renfrow Briquette Machine Company as collateral security therefor.    Indeed, an agreement to this effect is indorsed upon these subsequent notes as well.    To the end of making these loans, plaintiff borrowed $5000 from the bank and thereafter urged defendant and Harford to raise the $5000 for him so that he might repay the bank the loan made to him.    It is in evidence that defendant proposed that if plaintiff would surrender the two certificates which he held as collateral representing stock of a par value of $15,000 in the Renfrow Briquette Machine Company, he would sell the same or borrow money thereon from some one and pay $5000 to plaintiff on the indebtedness for which the collateral was held, and if more were realized thereon, he would use that in perfecting the patent of a briquette machine.    At the time plaintiff surrendered the certificates of stock under this agreement, defendant executed a written receipt therefor to plaintiff reciting the shares of stock by number as owned by defendant and being held by plaintiff George E. Wilkinson as collateral for loans to the Illinois Coalette Fuel & Mining Company.    This receipt recites, too, that the shares of stock are returned to defendant for the purpose ''mutually agreed upon.'' Both plaintiff and Harford testified the purpose ''mutually agreed upon'' contemplated that defendant should sell the stock and pay plaintiff $5000 on the indebtedness and it is conceded throughout the case that defendant sold the stock to Governor Renfrow a few months thereafter and appropriated the proceeds thereof to his own use instead of paying any portion thereof to plaintiff.    The argument as to the failure of proof goes only to the effect that plaintiff omitted to prove an agreement to return the stock to him within thirty days as alleged in the petition if a sale was not made.    It is true there is no direct proof

on this matter, but the proof is overwhelming that defendant agreed to sell the stock and pay $5000 of the proceeds to plaintiff on the indebtedness for which it had been held as collateral. This being true, a conversion is shown notwithstanding the omission to prove the agreement precisely as laid, for the gist of the matter is that defendant should sell the stock and pay $5000 to plaintiff. His agency with respect to this matter was to this extent only and the law will imply an obligation to return the collateral within a reasonable time thereafter if no sale was made, though it might not imply an obligation to return it within thirty days as alleged in the petition. The averment that the stock should be returned to plaintiff within thirty days if not sold is immaterial and may be treated as surplusage in the circumstances of the case, for several months thereafter defendant sold the stock, appropriated the proceeds to his own use and thereby actually converted the whole. It may be the averment that defendant agreed to return the stock within thirty days and failed to do so would be material to the cause of action and require proof in a suit for a breach of the contract, but when considered in this suit for conversion the failure to prove it at most amounts to no more than an immaterial variance. Under the statute, section 1847, Revised Statutes 1909, when the variance between the allegation and the proof is not material the court is authorized to direct the facts to be found according to the evidence as it did here.

The instructions for plaintiff are criticized, but they are obviously sufficient and the argument against them does not merit discussion in the opinion.

As before stated, the shares of stock were first pledged by defendant to plaintiff as collateral security for a loan of $3500 which was made to defendant and Harford for the purpose of promoting and financing the Illinois Coalette Fuel & Mining Company. As soon as this company was organized, plaintiff sur-

rendered to the makers thereof the note first given and accepted in lieu of it a new note for the same amount, executed by the Illinois Coalette Fuel & Mining Company. This note was signed by defendant as secretary of that company and Harford as its president. It was written on the note that the shares of stock alleged to have been converted were pledged as collateral security therefor. Thereafter plaintiff made two other loans to the same company and took its notes therefor, which notes were signed by Harford, the president of the company, and defendant as secretary. An indorsement appears on each of these notes as well to the effect that the same shares of stock involved here were held by plaintiff as collateral security therefor. In all, the three notes for which the collateral was held amounted to about $10,000. At the time plaintiff surrendered the shares of stock to defendant for sale in order to raise $5000, defendant executed a receipt to him therefor as above suggested. In this receipt, it is recited, too, that the stock was being held by plaintiff as collateral security for the several notes of the Illinois Coalette Fuel & Mining Company. Both plaintiff and Harford testified positively that the certificates of stock were held by plaintiff under an agreement to that effect as collateral security for all of these notes. On the trial, defendant testified that though the shares of stock were held by plaintiff as collateral security to the first note of $3500, executed by himself and Harford, no such agreement existed with respect to the matter of the loans for the Illinois Coalette Fuel & Mining Company. Defendant's theory was and is that plaintiff had no right whatever to withhold the stock as collateral for the corporation's indebtedness and that no agreement was made to that effect. On this feature of the case, defendant requested the following instruction without the words italicized therein. The court modified the instruction by inserting the italicized words, "or that

defendant consented that plaintiff should hold such shares as such security" and as so modified it was given to the jury.

"The court instructs the jury that the evidence shows that the one hundred and fifty shares of stock of the Renfrow Briquette Machine Company belonging to defendant, Misner, at the time it was originally pledged to plaintiff was so originally pledged to secure a note of Misner and Harford for thirty-five hundred dollars, and unless the jury find and believe from the evidence that thereafter a new agreement was entered into by the plaintiff, Wilkinson, and defendant, Misner, by the terms of which it was agreed that said shares of stock should be held as collateral security for the payment of one or all of the notes of the Illinois Coalette Fuel & Mining Company to plaintiff, Wilkinson, *or that defendant consented that plaintiff should hold such shares as such security,* then plaintiff, Wilkinson, was not entitled to retain possession of said shares of stock, and your finding must be for the defendant."

It is argued by defendant that the court erred in so modifying the instruction as to permit the jury to find the stock was pledged by defendant for the indebtedness of the Illinois Coalette Fuel & Mining Company upon merely finding "that defendant consented that plaintiff should hold such stock as such security." The argument assumes that nothing less than an express agreement to that effect will constitute a pledge. There can be no doubt that in order to constitute a pledge of personal property there must be a contract whereby the property is held as security. [22 Am. and Eng. Ency. Law (2 Ed.), 851; Jones on Pledges (2 Ed.), sec. 5.] But it is not essential that such a contract shall always be an express one, for it may be implied or inferred from the facts and circumstances of the case, if it appears the minds of the

parties met with respect to the same subject-matter and consented to the same thing for a sufficient consideration. [See Jones on Pledges (2 Ed.), sec. 5; 22 Am. and Eng. Ency. Law (2 Ed.), 851, 852; Borland v. Nevada Bank, etc., 99 Cal. 89; Taylor v. Jones, 3 N. Dak. 235.] It is true enough that, independent of a new agreement to that effect, the pledgee may not withhold the pledge as collateral for a debt other than that to which the pledge was originally made, as was decided in Southworth Co. v. Lamb, 82 Mo. 242. And it is true, too, that the mere withholding by one person of the property of another with the declaration that it will be withheld until a debt of the owner of the property is paid does not, in and of itself, constitute a contract of pledge, when nothing more appears than that the owner of the property so withheld did not object at the time, as was decided in Taylor v. Jones, 3 N. Dak. 235. But conceding these propositions to be entirely true, if it appears the property is held by a creditor as collateral security to a debt, with the consent of the owner of the property, for a sufficient consideration, then a contract of pledge appears, though it be not an express one. "Consent is a concurrence of wills" says Black's Law Dictionary. The instruction requested by defendant assumes that if it was agreed the shares of stock should be held as collateral security for the payment of one or all of the notes of the Illinois Coalette Fuel & Mining Company, then a pledge sufficiently appears, without requiring the jury to find a consideration therefor. Indeed, so far as the consideration for the pledge is concerned, there appears to be an abundance on that score if defendant agreed the collateral should be held to secure the note or notes of the Illinois Coalette Fuel & Mining Company, for he and all the witnesses agree that plaintiff accepted a note of $3500 of that company in lieu of the note executed by defendant and Harford for the same amount when the

pledge was originally made. As to the other notes, plaintiff and Harford say the money was loaned to the corporation on the security mentioned and it was so understood by all. Defendant and Harford owned practically all of the Illinois Coalette Fuel & Mining Company and controlled its affairs. The substitution of the note of this corporation for that of Harford and defendant, of course, furnished an abundant consideration for that pledge, provided defendant consented or agreed to the pledge. The notes themselves recite the stock was deposited therewith as collateral and the receipt which defendant gave when the stock was surrendered to him for sale does the same; but defendant was permitted to dispute the recital on the notes themselves, because those notes were not his contracts but the contracts of the corporation which he merely signed as an officer thereof, and he was permitted to dispute the receipt he gave on the theory that such a paper is not conclusive even against one who signs it. In view of this proof and the issue made, the jury could not have found in the language of the words added to the instruction by the court, ''that defendant consented that plaintiff should hold such shares as such security,'' without finding that he agreed or contracted to that effect. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.