248 S.W.2d 657 (1952)
OSBORN
v.
CHANDEYSSON ELECTRIC CO.
No. 42521.
Supreme Court of Missouri, Division No. 2.
May 12, 1952.
*658 J. L. London, St. Louis, for appellant.
R. Forder Buckley, E. C. Friedewald, St. Louis, for respondent.
BOHLING, Commissioner.
Charles F. Osborn sued Chandeysson Electric Company, a corporation, of St. Louis, Missouri, for damages arising out of a contract of employment culminating in an alleged agreement wherein, as part of the consideration, the defendant agreed to assign to plaintiff 150 shares of its capital stock. Plaintiff's petition was in two counts and plaintiff states the first count was for conversion of the stock and the second count was for breach of contract. (We refer to the parties as designated in the trial court.) The suit was filed February 11, 1941. Plaintiff was in the Armed Services during World War II and the trial was had in October, 1950. The jury returned a verdict for defendant on the first count and for plaintiff on the second count, awarding plaintiff $26,550 damages $15,000 for the value of the stock, admitted to be $100 a share, and $11,550 interest. Defendant's motion for new trial was sustained. Plaintiff appealed. The issues presented embrace the submissibility of plaintiff's case on each count, the propriety of plaintiff's two verdict directing instructions, whether the verdicts on Count II and on Count I are inconsistent, and whether plaintiff should have been required to elect on which count he would proceed to the jury, grounds sustained in the order granting a new trial.
Plaintiff's father, Joseph A. Osborn, and Dr. Pierre J. Chandeysson had been friends for fifty years and plaintiff had known Dr. Chandeysson from boyhood. Dr. Chandeysson started an electrical manufacturing business in 1902 and in 1919 incorporated the Chandeysson Electric Company. The company manufactures electro-plating motor generating sets. Dr. Chandeysson was President of the company and owned practically all of its stock. In 1919 plaintiff, then about 19 years old, worked for the company for several months. Plaintiff testified that when he informed Dr. Chandeysson he had another job, Dr. Chandeysson stated it would be a good thing to get experience in other electrical lines and after plaintiff had gained experience he would be glad to have him come back to work for *659 him. Dr. Chandeysson did not recall this conversation. Plaintiff gained experience in electrical engineering work. He went to work for the Ralston Purina Company as an electrical engineer in 1927 at $250 a month and received salary raises up to $325 a month, but the business depression of the 1930s resulted in his earnings falling to $225 a month.
Plaintiff testified that on several occasions Dr. Chandeysson, who was a bachelor, told plaintiff he was alone in the world, had built up his business, did not have anyone to carry on, and wanted someone he could train to carry on his business when he retired, and talked to plaintiff about doing this. A day or two before Christmas in 1934, Miss Adele Swenson (later Mrs. Chandeysson) and Dr. Chandeysson were at plaintiff's home, and, while the men were alone, Dr. Chandeysson asked plaintiff when he could get things straightened out to work for him, stating that he had work for plaintiff, definite duties, and would direct plaintiff what to do; that if plaintiff were going to work for him, it would have to be then; that, in lieu of increasing his salary, "I will assign to you a substantial interest in the Chandeysson Electric Company." Plaintiff told Dr. Chandeysson he thought this would be a good thing for him, but he was in charge of important work for the Ralston company and would have to give them notice.
Plaintiff next saw Dr. Chandeysson in early January, 1935. Dr. Chandeysson wanted to talk the matter over with plaintiff's father as he realized plaintiff had been working for the Ralston company for about nine years and it was an important step for plaintiff. The three made arrangements to meet at Bevo Mill. At that meeting, according to plaintiff, Dr. Chandeysson stated he knew the work plaintiff had been doing and there was no question in his mind that, if plaintiff followed his instructions, plaintiff would make good and some day be able to take over and assist him and run the company after he retired. Plaintiff testified: "Dr. Chandeysson told me he would pay me the same as Ralston Purina and in every conversation that he would assign to me a very substantial amount of Chandeysson Electric stock." Dr. Chandeysson did not say when or how much stock would be assigned or what plaintiff would have to do to be entitled to the stock.
Joseph A. Osborn, plaintiff's father, testified that at the Bevo Mill meeting: "He [Dr. Chandeysson] said he knew the boy could make good. He said there was no question about that, he had perfect confidence in him. He said he would train him and give him as much compensation as he was getting at the Purina Mills and would give him a substantial interest in the business"; and otherwise fully corroborated plaintiff's testimony on the Bevo Mill meeting.
Dr. Chandeysson was 75 years of age at the time of trial. His version differed from that of plaintiff and plaintiff's father. He testified, with respect to the material facts that plaintiff informed witness (he thought in September, 1934) he had given the Ralston company notice and "tackled me for a job"; that witness never at any time or place made the statements attributed to him by plaintiff or plaintiff's father; that he called Mr. Osborn, Sr., to have lunch with them at the Bevo Mill because he had decided to give his son a try, and told the father they had been friends a long time and he was taking a chance on losing his friendship by employing plaintiff, for if plaintiff did not make good it would be the end of their friendship, and if he did make good everything would be all right, and that was the reason for the father's presence.
Plaintiff went to work for the Chandeysson Electric Company on March 1, 1935, after giving the Ralston company notice of his intention to quit. Plaintiff's salary was $225 a month and in December, 1935, he was given a raise of $25 a month and a bonus of $250. We need not detail his services. According to plaintiff he performed his part of the contract until his discharge hereinafter mentioned.
Plaintiff testified that he was in Dr. Chandeysson's office about two weeks before Christmas, 1936, and Dr. Chandeysson had a stock book on his desk, and said: "`Charlie, I am assigning to you 150 shares of Chandeysson Electric Company stock.' *660 He always used I. He was the company." Plaintiff thanked him. Mr. C. A. Henneke was Vice-President, and Mr. C. E. Pfeiffer was Secretary and Treasurer of the company, and, with Dr. Chandeysson, constituted the Board of Directors. Dr. Chandeysson then called in Mr. Henneke and Mr. Pfeiffer and told them: "I have assigned 150 shares of stock to Charlie"; and in the absence of one of the others, plaintiff was to act on the Board of Directors. Plaintiff testified that he had faith in Dr. Chandeysson and never personally asked or made demand for the stock certificate.
Dr. Chandeysson denied that he ever told plaintiff he was assigning 150 shares of the stock to plaintiff, and the testimony of Mr. Henneke and Mr. Pfeiffer corroborated Dr. Chandeysson.
On the day before Christmas, 1936, Dr. Chandeysson handed plaintiff a check, stating: "Here's a bonus check for $1,800 to augment your salary."
Plaintiff testified that on December 31, 1936, Dr. Chandeysson, while in his office, gave plaintiff another check, stating: "Here is a five per cent dividend on 150 shares of Chandeysson Electric Company stock." The check was dated December 31, 1936, payable to Charles F. Osborn in the amount of $750, and was stamped "Dividend Check." Dr. Chandeysson testified he handed this check to plaintiff, but denied stating: "This is the dividend on the 150 shares of stock which I have assigned to you."
Mr. Pfeiffer, Secretary of the company, testified that a meeting of the Board of Directors was held December 18, 1936, and the minutes were written up and dated December 31, 1936. These minutes disclose that the meeting was for the purpose of approving the issuance of dividend checks to certain persons who were nonstockholders but potentially valuable to the company in "good will" and that "because the Internal Revenue might object to the outlay as not a justifiable deduction, Mr. Chandeysson had made the disbursement out of the dividend account."
Miss Dolores Bundschuh, the bookkeeper, testified she made out the "dividend checks" from a list handed her by Dr. Chandeysson; that there were 34 checks in number, and 11 dividend checks were issued to stockholders and 23 dividend checks were issued to nonstockholders; that the $8,000 in dividends going to nonstockholders were taken from "Miss Swenson's" share of the dividends; and she stamped each check "Dividend Check" under Dr. Chandeysson's instructions. Plaintiff's name was on the list handed Miss Bundschuh as follows: "150 Osborne 750."
The Chandeysson Electric Company reported on income tax forms to the United States Treasury Department and to the State of Missouri that it had paid plaintiff in the year 1936 $4,800 in salary and $750 in dividends.
In December, 1936, the first trouble developed between Dr. Chandeysson and plaintiff, and on August 14, 1937, Dr. Chandeysson objected to items of a few dollars for railroad and pullman fare on a trip to Chicago (St. Louis-Chicago) appearing in one of plaintiff's expense accounts, and, according to plaintiff, he was discharged.
Dr. Chandeysson testified that he did not discharge plaintiff.
Thereafter and prior to suit, demand was made on plaintiff's behalf for the delivery of the 150 shares of stock.
Miss Bundschuh testified that in December, 1936, the stockholders of record were: Adele Chandeysson, 2,100 shares, Dr. Chandeysson, 7,250 shares; C. A. Henneke, 150 shares; C. E. Pfeiffer, 150 shares; and each of the following had 50 shares standing of record in their respective names: Frank Eicholtz; Theobald A. Leonhardt; Richard Mort; George Schmidt; Jacob T. Sinn; Thelma E. Wrablik, and witness. Mr. Henneke and Mr. Pfeiffer each testified that, when informed a certificate for 150 shares had been issued in his name, he immediately endorsed the certificate in blank or to the company, and we understand that Miss Bundschuh did not pay anything for her stock and at the time of trial held only one share to qualify as an officer.
*661 The jury awarded damages on plaintiff's count for breach of contract, Count II.
Defendant says its after trial motion for judgment in accordance with its motion for a directed verdict at the close of all the evidence should have been sustained, Lilly v. Boswell, Mo.Sup., 242 S.W.2d 73, 77[10, 11]; Nelson v. Kansas City, 360 Mo. 143, 227 S.W.2d 672, 674 [3, 4], on the ground plaintiff failed to make a submissible case in that there was no contract to convey or assign any stock because the "contract" was too uncertain and indefinite as to the amount of stock plaintiff was to receive, when plaintiff was to receive the stock, and as to what plaintiff had to do, and for how long, before he would be entitled to any stock in the company. Defendant's authorities apply to the situation with respect to plaintiff receiving stock of defendant corporation as the contract existed at its inception under the instant record. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1062; Bay v. Bedwell, Mo.App., 21 S.W.2d 203, 205[3]; 1 Corbin on Contracts (1950), §§ 95, 97, 100; 12 Am. Jur. 554, § 64, nn. 2, 6, § 66, n. 15, § 69, nn. 20, 21, § 71, n. 20; 17 C.J.S., Contracts, §§ 31, 36c, page 359. However, viewing the evidence in the most favorable light to plaintiff a jury could find that the subsequent acts of Dr. Chandeysson in stating he was assigning 150 shares of the Chandeysson Electric Company stock to plaintiff made clear and enforceable the indefinite promise theretofore existing to assign to plaintiff a substantial interest in the company if the assignment was the carrying out of said original promise. Roberts v. Harmount Tie & Lumber Co., Mo.App., 264 S.W. 448[1]; Stout v. Caruthersville Hardware Co., 131 Mo.App. 520, 527, 110 S.W. 619, 621; Nelson v. Massman Const. Co., 231 Mo.App. 1, 91 S.W.2d 623, 626 [1-4]; Phillips Petroleum Co. v. Rau Const. Co., 8 Cir., 130 F.2d 499, 500[1, 2]; Talamini v. Rosa, 257 Ky. 228, 77 S.W.2d 627, 630[2, 3]; Kirkley v. F. H. Roberts Co., 268 Mass. 246, 167 N.E. 289[2, 3]; 1 Corbin, supra, § 101; 12 Am.Jur. 558, § 67; 17 C.J.S., Contracts, § 36, page 367, note 89; Restatement, Contracts, § 33.
Defendant says plaintiff cannot recover for a breach of contract because plaintiff did not plead a breach of contract. The parties agree that Count I is for conversion. Count II, as stated by defendant, contains unnecessary allegations and, among other things, alleges plaintiff "was the owner of said stock" on August 14, 1937, when he was discharged, and that defendant "has converted the same." Count II also pleaded, briefly, the contract, the consideration, notification of plaintiff by defendant of the assignment of the stock to plaintiff, and the nondelivery of the stock certificate, full and continued performance of the contract by plaintiff until his discharge by defendant, and defendant's failure and refusal, after demand, to issue the stock certificate to plaintiff, the breach, and the damages. Defendant's answer to Count II pleaded, among other things, the indefiniteness of the contract with respect to plaintiff acquiring an interest in defendant corporation and denied that plaintiff was discharged and that there was any "`breach of said agreement by the defendant' for the reason that such an agreement as alleged by plaintiff, not being in writing, is barred by the Statute of Frauds." The record does not disclose any motion attacking plaintiff's petition. In the circumstances, with Count I stating a claim for conversion, the allegations complained of by defendant in Count II may be considered as surplusage and Count II treated as stating a claim for a breach of contract. Morrill v. Alexander, Mo.App., 215 S.W. 764, 765[3, 4]; Waiters' Benevolent Ass'n v. Cella, Mo.App., 223 S.W. 444, 445[2].
Is the "contract" void under the Statute of Frauds providing that contracts for the sale of goods for $30 or upward shall not be good "unless the buyer shall * * * give something * * * in part payment, or unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged * * *." Section 432.020 RSMo 1949, V.A.M.S. Houston v. Mahoney, Mo.App., 219 S.W. 128[1], citing authority; 37 C.J.S., Frauds, Statute of, § 142, page 630; *662 2 Corbin, supra, 630, § 478. The contract, according to plaintiff, was that he was to come to work for defendant and receive the same salary the Ralston company was paying him and a substantial interest in defendant company. Plaintiff thereupon entered upon the performance of his obligation by giving up his position with the Ralston company and working for defendant. Plaintiff's performance of services constituted a good consideration and was the payment agreed upon for the stock according to plaintiff. Vogeler v. Punch, 205 Mo. 558, 103 S.W. 1001, 1005; Ostrander v. Messmer, 315 Mo. 1165, 289 S. W. 609, 613[3]. Under plaintiff's view of the evidence it was a jury question whether there had been performance by plaintiff and a recognition by defendant of such performance as entitled plaintiff to the stock. Lorenz v. Morney, 221 Mo.App. 409, 282 S.W. 59, 61. The statute does not preclude a recovery.
Defendant contends plaintiff sued the wrong party, basing the contention on the use of the personal pronoun by Dr. Chandeysson; i. e., that "he" would pay the same salary as the Ralston company and "he" would assign to plaintiff a substantial amount of the Chandeysson Electric Company stock. Defendant company had an authorized capital of $1,000,000, evidenced by 10,000 shares of stock authorized and outstanding, of which, as stated in defendant's brief, 7,250 were owned by Dr. Chandeysson and 2,100 were owned by his wife, "from which assignments of stock could have been made." C. A. Henneke only held his certificate for 150 shares of defendant's stock long enough to "endorse it to the company." The same situation existed with respect to the 150 shares standing in the name of C. E. Pfeiffer. Miss Bundschuh's testimony indicates she was not the owner of the 50 shares standing in her name. This accounts for 9,700 of the 10,000 shares of stock. The Secretary of the defendant company testified that Dr. Chandeysson was the owner of all the outstanding stock on December 12, 1933, when the last of the 10,000 shares were issued. The record is to the effect that Dr. Chandeysson handled the stock as he desired and was the Chandeysson Electric Company. He, as Chandeysson Electric Company, and not personally, employed plaintiff. The Chandeysson Electric Company paid plaintiff's salary, plaintiff's bonuses, and plaintiff's $750 "dividend" check. The parties understood and by their acts treated the contract as a contract between plaintiff and the Chandeysson Electric Company. "The trend of authority is to uphold as binding on the corporation acts or contracts on its behalf by a person or persons owning all or practically all the stock, even though there is a lack of, or defect in, some corporate step or action." 19 C.J.S., Corporations, § 1004, notes 39, 40, page 472. See also Id., § 1001, notes 82-90, page 467, § 1002. We think plaintiff could sue the defendant company.
Plaintiff makes the point in his brief that defendant was estopped to deny that he was entitled to 150 shares of the Chandeysson Electric Company stock. Plaintiff did not plead estoppel and we think the facts of record are not sufficient to invoke the doctrine of estoppel with respect to the 150 shares of stock. Waugh v. Williams, 342 Mo. 903, 119 S.W.2d 223, 226[6, 8]; State ex rel. City of Sikeston v. Public Service Comm., 336 Mo. 985, 82 S.W.2d 105, 108[2]; Section 509.090 RMo 1949, V.A.M.S.
The new trial was awarded for error in giving plaintiff's two verdict directing instructions and for not requiring plaintiff to elect between his counts on conversion and for breach of contract. We have considered plaintiff made a submissible case on breach of contract.
Plaintiff's instruction No. II proceeded upon the theory he was the "absolute owner" of the stock involved, and he stresses Williams v. Everett, Mo.Sup., 200 S.W. 1045, 1049[1-10], for submitting a recovery on conversion. The petition in the Williams' case was in one count, sounding in conversion. In that case the Articles of Incorporation named Williams as the owner of 150 shares of the corporate stock, and were signed by him and the other incorporators. The court stated, 200 S.W. loc. cit. 1050, the Articles of Incorporation *663 "constituted the legal title of each [incorporator] to the number of shares stated * * *." And: "The contract of incorporation is tripartite, the stockholders agreeing between themselves as to their interests * * *." Williams had the legal title to the shares involved.
The action of trover, or trover and conversion, seeks as damages the value of specific personal property of plaintiff which has been converted by defendant to his own use. To maintain trover, it has been considered that plaintiff must have title to, or a right of property in and a right to the immediate possession of, the stock at the time of conversion, and "`there must be an invasion of a legal, as contradistinguished from an equitable right.'" 11 Fletcher, Private Corporations, p. 149, § 5114, nn. 97, 98; Rosencranz v. Swofford Bros. Dry Goods Co., 175 Mo. 518, 529, 75 S.W. 445, 448, 97 Am. St.Rep. 609. "An equitable title or right will not suffice for the maintenance of trover, or at least it alone is not sufficient." 65 C.J. 60, § 94, nn. 26, 27. See also 53 Am.Jur. 869, § 73, n. 10; Newman v. Mercantile Trust Co., 189 Mo. 423, 445(2), 88 S.W. 6, 11(2); Wilkinson v. Misner, 158 Mo.App. 551, 555, 138 S.W. 931, 932; Luhmann v. Schaefer, Mo.App., 142 S.W. 2d 1088, 1090.
There is no showing of record that plaintiff ever held legal title to 150 shares of defendant corporation stock; and Williams v. Everett, supra, does not establish error in connection with the ruling on the motion for new trial with respect to the count for conversion.
Plaintiff states his instruction predicating a recovery for a breach of contract properly declared the law, citing Williams v. Everett, supra, and 11 Fletcher, Private Corporations, 338, § 5165, nn. 78-80, and 162, § 5117. Williams v. Everett was for conversion, as above stated, and did not rule an instruction submitting a breach of contract. The text references in Fletcher are to the effect that one having title to stock may sue in conversion and discuss his measure of damages, respectively. These authorities do not disclose that the court erred in awarding a new trial for the giving of plaintiff's said instruction.
The instruction submitted many facts. It began by following the second count of the petition in requiring a finding that plaintiff and defendant entered into a contract for plaintiff's services; that plaintiff performed and rendered "valuable services" to defendant; that defendant notified plaintiff 150 shares of stock was being assigned to him; that plaintiff was later discharged "without reasonable cause"; that certain additional facts of an evidentiary nature occurred, such as the payment to plaintiff of a dividend of $750, "being a 5% dividend on said stock," the "said dividend was duly declared," the reporting of said dividend to the United States and the State of Missouri, "and that said payment was a dividend on said stock paid by the defendant to plaintiff as a stockholder, then you may find that plaintiff is entitled to recover the value of the stock" et cetera.
Instead of following the count for a breach of contract with the allegations pertaining to a conversion deleted therefrom, the instruction commingled a claim in contract with one in conversion. It assumed the alleged dividend was paid to plaintiff "as a stockholder." Reading the verdict in light of the instructions on the separate counts, the verdict appears to be inconsistent in that on the conversion count the jury found plaintiff was not the owner of the stock while under the wording of the instruction on the breach of contract count the jury considered plaintiff was the owner of the stock. Shaw v. Richards, 208 Mo.App. 671, 236 S.W. 405, 406[1]; East St. Louis Cotton Oil Co. v. Skinner Bros. Mfg. Co., 8 Cir., 249 F. 439, 441[1]. Consult 28 C.J.S., Election of Remedies, § 5, page 1069; 18 Am.Jur. 161, § 44; 11 Fletcher, Private Corporations, 339, § 5165, n. 83; 1 C.J.S., Actions, § 51, note 28, page 1147. An essential element of plaintiff's claim for a breach of contract was that, when defendant notified plaintiff 150 shares of stock was being assigned to him, such action was the making of defendant's theretofore indefinite promise a definite and certain *664 promise under the contract. The finding of this fact should be required in plain language. Instructions should not assume or impliedly assume the existence of disputed essential facts. Glaser v. Rothschild, 221 Mo. 180, 203(I), 120 S.W. 1, 8, 9, 22 L.R.A.,N.S., 1045; Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, 567[8, 9]; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W.2d 559, 563[7]; Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43, 58[8]; Stark v. Bingaman, Mo.App., 223 S.W. 946, 947[4]. There was ample reason for the trial court's ruling and we are not inclined to interfere.
The order granting a new trial is affirmed and the cause is remanded.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.
All concur.