**J. D. GARRISON, Plaintiff-Respondent,**

v.

**J. L. QUERNER TRUCK LINES, Inc., Defendant-Appellant.**

No. 7618.

Springfield Court of Appeals.

Missouri.

Dec. 17, 1957.

Allen, Woolsey & Fisher, Russell G. Clark, Springfield, for appellant.

Charles M. Wantuck, Fred Moon, Springfield, for respondent.

McDOWELL, Judge.

This appeal is from a judgment of the Circuit Court of Greene County, Missouri, for plaintiff and against defendant for $2,500 rendered in an action for conversion of an International tractor truck.

The facts show that plaintiff, on January 23, 1956, owned and operated a garage and repair business on U. S. Highway 66 in Greene County, Missouri; that at said time plaintiff had in his possession a certain International truck, the subject matter of this action, which he purchased from one, John Dysinger, a resident of San Antonio, Texas, January 16, 1956, and, at the time of said purchase, received from said Dysinger an assignment of the certificate of title to said motor vehicle as provided by the laws of the state of Texas, which is in evidence as defendant's exhibit (A).

The defendant, J. L. Querner Truck Lines, Inc., was a Texas corporation, engaged in the trucking business with its principal place of business in San Antonio, Texas.

On or about January 23, 1956, an employee of defendant, named Stebbins, was transporting, by truck, a load of wool from defendant's place of business in Texas to New York City. When he reached Springfield, Missouri, his truck broke down and he took it to plaintiff's garage for repairs and asked to rent plaintiff's tractor truck to convey the load of wool on to New York for a rental price of $350. The evidence shows that plaintiff refused to lease his tractor to Stebbins but called defendant's place of business in San Antonio and talked to J. L. Querner, president of said company, about leasing the truck to the defendant so that Stebbins could complete the trip. That it was agreed between defendant-company and the plaintiff that defendant lease said truck for the sum of $350 and that plaintiff allow Stebbins to proceed with the cargo of wool to New York City and that after the wool was delivered, Stebbins would bring plaintiff's truck back to Springfield and get the truck Stebbins left for repairs.

The evidence shows that Stebbins drove plaintiff's truck to New York City, delivered the cargo of wool and, thereafter, took the truck to defendant's place of business in San Antonio; that after making a search to find his truck, plaintiff called J. L. Querner, president of defendant-company, by telephone, and demanded the return of his truck, which demand was refused. Querner admitted that in February, thereafter, he filed an attachment suit against John Dysinger, notified the sheriff that the truck was in defendant's place of business and had it attached and sold to satisfy a judgment for Dysinger's indebtedness to Querner.

In our opinion we will refer to respondent as plaintiff and to appellant as defendant.

Defendant relies upon one assignment of error for reversal in this case, that is, that the plaintiff's evidence was insufficient to make a case. The reasons assigned are:

(A) That the evidence failed to show plaintiff had legal title to the subject matter of the action.

(B) Failed to prove conversion by demand for the return of the property.

(C) Because plaintiff's evidence shows only an equitable interest in the subject matter of the action.

(D) That the court erred in refusing to admit into evidence proceedings and judgment of the Bexar County District Court and the judgment entered therein and in giving such judgment full faith and credit.

■ In passing upon the sufficiency of the evidence to make a case plaintiff's evidence is taken as true, together with all reasonable inferences that can be drawn therefrom and any evidence offered by the defendant that supports plaintiff's case. Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 259 S.W.2d 132, 139; Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950.

■ It is the duty of this court to review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Sections 510.310(4) and 512.160(3) RSMo 1949, V.A.M.S.; Steinzeig v. Mechanics & Traders Insurance Co., Mo.App., 297 S.W.2d 778, 780(2); Fischman v. Kiphart, Mo.App., 297 S.W.2d 784, 786(1).

We do not agree with defendant's first contention that the evidence failed to show that plaintiff had legal title to the subject matter of the action.

Defendant cites Mackie and Williams Food Stores, Inc., v. Anchor Casualty Co., 8 Cir., 216 F.2d 317, to support this contention. This case is an authority against defendant. The issue decided by the court was whether the insured obtained an insurable interest in a motor vehicle where the purchase was made of the motor vehicle in Missouri from one who had only the assign-ment of an Arkansas title obtained in bankruptcy. The court held that the policy of insurance did not cover the loss because no insurable interest passed by the attempted sale under the Missouri statutes, citing § 301.020, which provides:

"Every owner of a motor vehicle or trailer, which shall be operated or driven upon the highways of this state, except as herein otherwise expressly provided, shall file, * * * in the office of the director of revenue, an application for registration * * *"

Section 301.190 RSMo 1949, V.A.M.S. reads: "No certificate of registration of any motor vehicle or trailer, or number plate therefor, shall be issued by the director of revenue unless the applicant therefor shall make application for and be granted a certificate of ownership of such motor vehicle or trailer, or shall present satisfactory evidence that such certificate has been previously issued to the applicant for such motor vehicle or trailer. * * *"

Section 301.210 RSMo 1949 V.A.M.S. reads: "1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, * * * and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer.

"2. The buyer shall then present such certificate, assigned as aforesaid, to the director of revenue, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being one dollar. * * *

"4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided,

and the sale of any motor vehicle or trailer registered, under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

The court held that under the Missouri law Mackie, who had an assignment of the Arkansas title, could have operated the motor vehicle for fifteen days on the Arkansas license plates but that permission would not have excused him from applying for the registration for the vehicle in Missouri in order for him to perfect a transferable title. The court made this statement of law on page 320:

"* * * Whether he operated the vehicles on the highways of Missouri or did not do so, it was clearly his duty under the Missouri law, as their owner, to apply for and obtain a certificate of ownership and transfer that certificate to Mackie and Williams at the time of sale to the latter."

This case does not hold that Mackie did not have title to the automobile. It only held that he could not transfer an insurable interest until he had secured a Missouri certificate of title and had properly assigned it to the purchaser. On page 320(1, 3), the court stated:

"If Mackie and Williams had been the original purchaser from the receiver in Arkansas and had obtained an assignment of the Arkansas certificate of title sufficient to pass title under the law of Arkansas to the vehicle registered in that state, the Missouri statute would not deprive the Missouri purchaser of a vehicle purchased in Arkansas of having an insurable interest in that vehicle until he had procured a Missouri certificate of ownership upon timely application therefor. Crawford v. General Exchange Ins. Corp., Mo.App., 119 S.W.2d 458. But such is not the case. * * *"

This case holds that if the purchaser of a motor vehicle registered in another state obtains an assignment of title therefor sufficient to pass title under the laws of that state, he does obtain a title sufficient to afford an insurable interest.

■ In the instant case John Dysinger, who had shortly before the transfer of the motor vehicle in question by him to plaintiff, been an employee of defendant and a citizen of Texas. He had purchased the vehicle and had made application for and received a certificate of title thereto in the state of Texas. He sold and delivered this tractor truck to plaintiff and assigned the certificate of title thereto issued by the state of Texas, signed and acknowledged as required by the laws of that state. This certificate of title is in evidence as defendant's exhibit (A).

Article 1436–1, § 33, Vol. 3, Vernon's Texas Penal Code, reads:

"No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed."

The Texas certificate of title held by John Dysinger to the tractor truck in question was conveyed and assigned to plaintiff in accordance with the law of Texas, above stated, and, under the law of Texas, plaintiff obtained the legal title to this motor vehicle.

■ We agree that plaintiff did not have such a certificate of title under the Missouri law to enable him to make a legal conveyance to someone else but he, unquestionably, possessed a legal title under the Texas certificate of title. The purpose of the Missouri law requiring the owner of a motor vehicle holding a certificate of ownership from some other state is to provide a ready means of tracing title and ownership.

Under this assignment of error defendant cites Hadley v. Smith, Mo.App., 268 S.W.2d 444; Seward v. Evrard, 360 Mo.App. 893, 222 S.W.2d 509; Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975; and Craig v. Rueseler Motor Co., Mo.App., 159 S.W.2d 374. These cases involve questions relating to the transfer of a Missouri title to a motor vehicle. In the Smith case it was held that the certificate of title must not only be signed by the seller but must be acknowledged. Likewise, the Seward case involved the assignment of title where seller failed to endorse the certificate of title. The Pearl v. Interstate Securities Co. case held that one rightfully in possession of a motor vehicle may maintain replevin although the certificate of title had not been transferred to purchaser as required by law. The Craig case involved an attempted sale of an automobile in Missouri without compliance with the statute.

We are not here concerned with the transferring of title by one holding a certificate of title under the laws of Missouri to another but we are concerned with one who purchases a motor vehicle, registered in another state, and receives a valid transfer of title according to the laws of that state.

■ It is next contended that the evidence fails to show conversion by demand for return of the car and the refusal to return.

In Blum v. Frost, 234 Mo.App. 695, 116 S.W.2d 541, 546(4–6) the law is stated:

"In 65 C.J. p. 11, § 1; page 29, § 37; p. 31, § 37, conversion is defined as follows: 'An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. The legal wrong denominated "conversion" is any unauthorized act of dominion or ownership exercised by one person over personal property belonging to another in denial of, or inconsistent with, his right.'

"In Wilkinson v. Misner, 158 Mo.App. 551, loc. cit. 555, 138 S.W. 931, 932, appears the following pronouncement: 'Any wrongful exercise of dominion by one person over the goods and chattels of another, which is inconsistent with and exclusive of the owner's rights therein, amounts to a conversion thereof.'"

In Sigmund v. Lowes, Mo.App., 236 S.W. 2d 14, 19, this law is stated:

"* * * The jury was entitled to conclude from this that there was 'an unauthorized act of dominion or ownership' over the property of plaintiff, under the doctrine of Blum v. Frost, 234 Mo.App. 695, 116 S.W.2d 541.

"Defendant argues that plaintiff has made no case on conversion because there was no evidence that plaintiff made demand on defendant to deliver the corn or that defendant refused to deliver, citing St. Louis Fixture & Show Case Co. v. F. W. Woolworth Co., 232 Mo.App. 10, 88 S.W.2d 254, and Detmer v. Miller, Mo.App., 220 S.W.2d 739.

"We have examined these cases and find them not persuasive in the case at bar. Demand and refusal are merely evidential, not creative, and they need not be shown to make out a case of conversion where some other independent act of conversion (some act in opposition to the rights of the owner) is in evidence. Citizens' Bank of Sikeston v. Scott County Milling Co., 210 Mo.App. 603, 243 S.W. 433."

Pantz v. Nelson, 234 Mo.App. 1043, 135 S.W.2d 397, involves facts so different from the instant case that we need not discuss it. However, in 135 S.W.2d on page 402(5) of the opinion, it was stated that where defendant admits knowledge of the plaintiff's claim, as here, and unqualifiedly claims title, demand and refusal to deliver are unnecessary.

In Detmer v. Miller, Mo.App., 220 S.W. 2d 739, 744(7), this law was stated:

"Where a defendant comes into the possession of property lawfully or rightfully, as, for instance, in the case of a

bailee, a demand for its surrender is essential in order to constitute its further retention a conversion. Where, however, the property is taken from the plaintiff against his will and in open defiance of his title and right to possession, there is a conversion by virtue of the act itself, and no demand is necessary to make it so. * * *

"In this case defendant acquired possession of the automobile, and later sold it, in open defiance of plaintiff's rights, and it was therefore unnecessary that plaintiff demand its return in order to give rise to his cause of action. * * *"

We think this last statement of law, made in the case cited by defendant, decides the issue raised under this contention. Defendant, corporation, by its president, leased plaintiff's truck for a trip to New York City and agreed that the truck would be returned to plaintiff in Springfield. Instead, defendant's agent, in violation of this agreement, assumed dominion over the truck, took it to defendant's place of business in Texas, notified the sheriff that the truck was in the possession of defendant so that it could be levied on under an attachment writ and sold as the property of Dysinger for a debt allegedly owed the president of the corporation. This constituted conversion, even without the demand. There is no merit in this contention.

We find no merit in defendant's contention that plaintiff had only an equitable title.

The last contention made by defendant is that the court erred in not admitting the proceedings and judgment of the Bexar County District Court wherein the property was attached and sold as the property of John Dysinger.

This evidence was clearly inadmissible. At least, it could not aid defendant's cause. It clearly shows that the defendant, through its president, was denying the right of plaintiff in the property in issue.

STONE, P. J., and RUARK, J., concur.